IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA WALSTON JACKSON,

        Plaintiff,

    v.

CCA OF TENNESSEE, INC.,

        Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

## DEFENDANT CCA OF TENNESSEE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 37 MOTION TO COMPEL DISCOVERY

Defendant CCA of Tennessee, Inc. ("CCA"), by and through its attorneys, hereby requests that this Court compel Plaintiff Renita S. Walston Jackson ("Plaintiff") pursuant to Rule 37 of the Federal Rules of Civil Procedure to answer questions asked under Rule 30 of the Federal Rules of Civil Procedure which seek information which is relevant and/or may lead to the discovery of admissible evidence. CCA is entitled to information relating to its potential liability and damages relating to Plaintiff's claims under the District of Columbia Human Rights Act ("DCHRA") and the District of Columbia Family and Medical Leave Act ("DCFMLA"). An order compelling Plaintiff to provide appropriate testimony is necessary to ensure the orderly presentation of this case to this Court.

It is apparent that Plaintiff does not understand that the Federal Rules of Civil Procedure establish the appropriate scope of CCA's inquiries regarding her claims and damages. For example, she has refused to answer questions relating to information obtained from Plaintiff's healthcare providers and employers some of which was provided to CCA in response to its subpoena *duces tecum*. She also has refused to provide information relating to individuals whom she has identified in her testimony or discovery responses on grounds of privilege and

confidentiality.  Accordingly, CCA requests that this Court direct Plaintiff as to the proper

bounds of CCA's inquiries so she may provide direct and complete answers to the questions

asked when her deposition recommences, and refrain from making unwarranted and baseless

objections which have needlessly protracted this litigation.

## I.    FACTUAL STATEMENT

On September 12, 2005, Plaintiff filed a *pro se* Complaint against CCA in the Civil

Division of the Superior Court of the District of Columbia for conduct allegedly arising during

her employment.  Exhibit 1 (Complaint).  The sum total of the allegations made in Plaintiff's

Complaint were as follows:

> After going through approximately two years of discrimination
> (difference in treatment) and harassment, I attempted to inform
> management verbally and in writing and due to actions by [several
> wardens] that were beyond my control I was wrote up repeatedly,
> harassed, and ultimately terminated wrongfully.  Due to a . . .
> difference in treatment/harassment, I have subsequently developed
> "Panic Attack Syndrome," a medial disorder due to stress.

*Id.*  At that time, it was unclear from the Complaint what the basis for Plaintiff's lawsuit was.

CCA now understands that Plaintiff is alleging that CCA wrongfully denied her medical leave

under the DCFMLA, and discriminated against her because of pregnancy and failed to

accommodate her alleged panic anxiety syndrome under the DCHRA.  Dkt. Nos. 4, 8.

On March 4, 2006, after Plaintiff retained counsel, CCA received Plaintiff's responses to

CCA's First Set of Interrogatories.  Exhibit 2   (Plaintiff Renita S. Walston Jackson's Responses

to Defendant CCA of Tennessee, Inc. First Set of Interrogatories ("Pl. Interrog Resp.")).

Plaintiff did not object to CCA's interrogatories.  *Id.*  The interrogatories and responses which

are pertinent to this motion are the following:

Interrogatory No. 1: Identify (in accordance with the Definitions and Instructions
section) all individuals whom you believe have personal knowledge of and/or are
aware of any acts pertaining to the claims or events described in the Complaint

and/or your answers to these Interrogatories, whether relating to liability or damages, and describe in detail the knowledge held by each such person.

**RESPONSE:**

\* \* \*

e.      Reginald Jackson witnessed and overheard Warden Figuora making inappropriate comment regarding Plaintiff. Mr. Jackson also witnessed Plaintiff having a panic attack and has knowledge that Defendant treated Plaintiff differently because of her disability and other illnesses.

Interrogatory No. 4: Describe in detail each and every occasion on which you complained to and/or spoke with management about the alleged harassment or discrimination, including in your response the identity of the person(s) to whom you complained, the date on which any such conversation occurred, the location of any such conversation, the substance of the statements made by you and management, and the identities of any other persons participating in or witnessing any such conversation.

RESPONSE:                           \* \* \*
Plaintiff also requested sick leave under FMLA for her illness as a result of her pregnancy and miscarriage and for her medical problems that she sustained during an automobile accident.  Plaintiff also requested leave under ADA for permission to seek medical care for her disability (panic attack syndrome) and to leave Defendant's facility when she had a panic attack (**Exhibit B**).

Defendant failed to accommodate Plaintiff under FMLA or ADA but wrote her up and denied her medical leave for the days that she missed for pregnancy, miscarriage, injuries resulting from an automobile accident and for her disability (panic attack syndrome) even though Plaintiff provided medical certification for her illness and disability (panic attack syndrome) (**Exhibit C**).[1]

Interrogatory No. 7:  If you have consulted and/or treated with any medical doctor, physician, psychiatrist, therapist, or other healthcare professional as a result of the allegations set forth in your Complaint, identify each such health care provider and state: (a) the date(s) on which you consulted the health care professional; (b) the reason for seeking such treatment; and (c) the date on which you ceased to be under the care of such health care professional.

---

[1] Exhibit C does not accompany this motion because it is not material to the discovery disputes addressed in this motion.

RESPONSE:

**Health Providers**
Prince Georges Hospital Center
Riverside Primary Care of District Heights
Metropolitan Washington Orthopedic Ass.
Dr. Jong S. Lee
Dr. Jalal A. Saied
Dr. Florentino N. Loya

**See Exhibit B** for dates of treatment, reason for treatment and the date that the treatment ended.

Interrogatory No. 8: Describe with particularity all damages which you contend you suffered as a result of the acts alleged in the Complaint, including in your response the dollar amount claimed for each alleged injury, a description of the method or formula used to calculate the damages claimed in your Complaint, and the total amount of attorneys' fess and costs incurred as a result of this matter.

**RESPONSE**

| | |
|---|---|
| Lost Wages | $50,000.00 |
| Injury to reputation and character | $80,000.00 |
| Financial Lost | $200,000.00 |
| Physical & Mental Pain & Suffering | $3,500,000.00 |
| Estimated Attorney's Fees and cost: | $35,000.00 |
| Total estimated Damages | $3,855,000.00 |

Plaintiff also responded to CCA's requests for production of documents and produced documents without Bates Numbers. Exhibit 3 (Plaintiff Renita S. Walston Jackson's Responses to Defendant CCA of Tennessee, Inc. First Requests for Production ("Pl. RFP Resp.").[2]

From April 21, 2006 thru November 14, 2006, Plaintiff attempted unsuccessfully to have this Court remand this case to the Superior Court for the District of Columbia. Dkt. Nos. 4, 7, 8 and 11. Thereafter, Plaintiff took no action to prosecute this case until the Court issued an order on January 29, 2007 for Plaintiff to show cause why the case should not be dismissed for failure to file a report of a Local Rule 16.3 scheduling conference. Dkt. No. 12. Plaintiff responded to

---

[2] Due to the volume of documents which Plaintiff produced to CCA as attachments to her response, CCA is attaching only those documents which are relevant to this motion. If this Court so desires, CCA will provide the additional documents.

the order to show cause on February 6, 2007. Dkt. No. 13. On May 9, 2007, the Court gave

Plaintiff a second opportunity to submit the Local Rule 16.3 report and she complied on June 4,

2007. Dkt. Nos. 14, 16.

The scheduling of depositions was postponed thereafter pending this Court's

consideration of Plaintiff's motion to dismiss claims for discrimination under the federal

Americans with Disabilities Act and Family and Medical Leave Act. Dkt. No. 18. On

November 5, 2007, this Court granted Plaintiff's motion to dismiss, which meant that solely

Plaintiff's state law claims remained in the case. Dkt. No. 21. Thereafter, CCA noticed

Plaintiff's deposition for November 29, 2007. *See* Exhibit 4 (Affidavit of Alison N. Davis

("Davis Aff.") at ¶ 3). On November 27, 2007, counsel for Plaintiff informed counsel for CCA

that Plaintiff would not be available for her deposition. *Id.* On December 20, 2007, Plaintiff's

deposition was rescheduled to January 11, 2008 at 10:00 am. *Id.* at ¶ 4. On January 11th, the

deposition commenced at 11:30. Exhibit 5 (Transcript of Plaintiff's Deposition Volume 1 ("Pl.

Dep., Vol. 1") at 4:1). Due to Plaintiff's childcare arrangements, the deposition was adjourned at

2:23 p.m. to January 25, 2008. *Id.* at 125:17.

On January 22, 2008, CCA served subpoenas *duces tecum* on the healthcare providers

whom Plaintiff either had identified in her discovery responses or whose names were found in

documents which she had produced. Davis Aff. at ¶ 5. The healthcare providers were: (1)

Metropolitan Orthopedic, (2) Riverside Primary Care, (3) Prince George's County Hospital, (4)

Dr. Florentine Loya, (5) Dr. Jalal Saied, (6) Dr. Jong Lee, and (7) Dr. Piotr Grojec. CCA

provided notice to Plaintiff of the subpoenas *duces tecum* and her right to object. Davis Aff.,

Exhibit C. CCA also served a subpoena *duces tecum* on Kelly Services, Inc., whom Plaintiff had

identified at her deposition as an employer for whom she worked after her employment with

CCA terminated. *See* Exhibit 6 (Subpoena to Kelly Services, Inc.); *see also* Pl. Dep., Vol. 1 at

15:4-16:2.

On January 24, CCA served a second request for production of documents and requests

for admission on Plaintiff. Davis Aff. at ¶ 5. Shortly after receiving the subpoenas *duces tecum*,

on January 25, counsel for Plaintiff informed CCA that she would be filing a motion to quash

because Plaintiff had not consented to her healthcare providers' disclosure of her medical records

to CCA. Davis Aff. at ¶ 6. Counsel for Plaintiff also informed CCA that Plaintiff would not be

attending the January 25th deposition because she was ill. *Id.* In a good faith attempt to resolve

this issue, counsel for CCA provided to counsel for Plaintiff authorizations for the healthcare

providers to release Plaintiff's medical information as well as set forth in writing CCA's

entitlement to Plaintiff's medical records despite the absence of a release from Plaintiff. *Id.*

Plaintiff's deposition also was rescheduled to March 3, 2008. Plaintiff neither returned the

medical authorizations nor filed a motion to quash. *Id.*

On February 6, 2008, CCA proposed a protective order which would have addressed

Plaintiff's concerns regarding confidentiality. *Id.* at ¶ 7. Plaintiff never agreed to any protective

order. *Id.* On March 2, 2008, CCA received responses to its second request for production,

Exhibit 7 (Plaintiff's Response to Defendant's Second Request for Production of Documents),

and requests for admissions, Exhibit 9 (Plaintiff's Response to Defendant's Request for

Admissions). Plaintiff objected to providing additional information regarding her search for

employment after her employment with CCA terminated and money which she allegedly

borrowed from relatives on the grounds of "privilege and confidentiality." *See* Exhibit 7, 3-4.

She proceeded, however, to identify relatives and the amount of money which she allegedly was

forced to borrow from them because of CCA. *Id.*, Exhibit 1. She also provided a list of personal

effects that she alleges she lost because of CCA's conduct. *Id.*, Exhibit 2. At 11:59 p.m. on

March 2, 2008, counsel for Plaintiff sent an email to counsel for CCA in which she advised that

she would be seeking a protective order and wanted CCA's agreement that it would not ask any

questions relating to the documents that had been provided in response to the subpoenas *duces*

*tecum*. Davis Aff. at ¶ 9, Ex. F.

Prior to the commencement of the deposition the next morning, counsel were unable to

resolve this discovery issue. Consequently, the parties contacted this Court via telephone to

advise that there was an ongoing discovery dispute. The parties were directed to continue as far

as possible with the deposition, and, if necessary, proceed with a motion. *Id.* at ¶ 10.

During Plaintiff's deposition on March 3, she was uncooperative and provided evasive

and incomplete responses.[3] Plaintiff repeatedly would not answer the questions posed. CCA's

efforts to gather information regarding both liability and damages were thwarted. *See e.g.*,

Exhibit 8 (Transcript of Plaintiff's Deposition Volume 2 ("Pl. Dep., Vol. 2") at 134:3-15,[4] 138:2-

14,[5] 144:2-19,[6] 157:7-21[7]). Plaintiff refused to provide additional information regarding the

$41,250.00 which she allegedly had to borrow from relatives due to her termination on the

grounds that the information was "privileged and confidential." *Id.* at 152:12-156:4[8] Plaintiff

also resisted CCA's efforts to elicit information relating to her marriage and her husband's

knowledge of this case because it was "personal and confidential". *Id.* at 143:15-144:12.[9]

Plaintiff would not even provide information regarding one of her healthcare providers.

Plaintiff refused to provide any information regarding her primary care physician, Dr. Poydras,

---

[3] Accompanying this memorandum is a DVD which contains the videotape of Plaintiff's deposition ("Videotape").
[4] Videotape at 10:04:52-05:20.
[5] Videotape at 10:08:23-08:58.
[6] Videotape at 10:14:06-14:50.
[7] Videotape at 10:28:14-28:42.
[8] Videotape at 10:23:44-27:07.
[9] Videotape at 10:13:37-14:50. Plaintiff identified her husband, Reginald Jackson, as an individual with knowledge of her claims and damages. *See*, *supra* at 3.

who had treated her for anxiety. *Id.* at 141:5-143:14.[10] The following is an example of Plaintiff's recalcitrance:

Q       When did you start seeing Dr. Poydras for panic attack syndrome?

A       That's personal, confidential information.    That's my primary care physician.  It has nothing to do with this case.

Q       Ms. Jackson, you are claiming that CCA of Tennessee caused you to suffer from panic attack syndrome and that it also exasperated, and you are claiming damages related to that.

A       They did.

Q       We have the right to inquire about that to gather information in order to respond to your claim.  Therefore, could you please tell me when you started seeing Dr. Poydras?

A       Dr. Poydras is my primary care physician.  It does not pertain to CCA or this case.

Q       So she is not treating you for panic attack syndrome?

A       She is not a panic attack physician.  I didn't go to her just because of panic attacks.  She is my primary care physician, as I first stated to you.

                                    * * *

Q       So you have seen Dr. Poydras for panic attack syndrome?

A       For anxiety, panic attack syndrome.

*See* Pl. Dep., Vol. 2 at 142:6-143:14.[11]

---

[10] Videotape at 10:32:43-33:05.
[11] Videotape at 10:12:35-13:37.

Counsel for Plaintiff also made specious objections during the deposition. She objected

to questions regarding the wages which Plaintiff earned while working for BT Healthcare

Services ("BT") because "Ms. Jackson has never provided you with any information relating to

BT" and "[t]hat is the information that you illegally obtained from Kelly Services without her

authorization."[12] *Id.* at 161:11-162:1.[13]  Counsel for Plaintiff went so far as to object to a

doctor's note which Plaintiff produced to CCA in response to its Interrogatories and requests for

production on the grounds they were:

> included in the illegal documents you received from your illegal subpoena that
> you represented yourself . . On January 22nd you misrepresented yourself under 4-
> 306, the Maryland Statute, that you were a law enforcement and you were entitled
> to these documents, and which you were not.  So we are objecting to any of these
> documents of which we did not provide to you, and I will review these documents
> and make sure that none of this was actually included in my request to you, and
> I'm sure that they were not, but we will get back to you.

*Id.* at 175:8-176:6.[14]  Due to Plaintiff's uncooperativeness and counsel for Plaintiff's frivolous

objections, the deposition became unproductive and was adjourned pending the outcome of this

motion.

## II.    ARGUMENT

### A.    CCA IS ENTITLED TO INFORMATION RELEVANT TO, OR LIKELY TO LEAD TO, THE DISCOVERY OF ADMISSIBLE EVIDENCE RELATING TO PLAINTIFF'S CLAIMS FOR WRONGFUL DENIAL OF MEDICAL LEAVE UNDER THE DCFMLA AND FAILURE TO ACCOMMODATE UNDER THE DCHRA, AS WELL AS HER CLAIM FOR DAMAGES.

This Court has considerable discretion to resolve discovery disputes. *Tequila Centinela,*

*S.A. de C.V. v. Bacardi & Co.,* 242 F.R.D. 1, 6 (D.D.C. 2007).  Pursuant to Rule 26(b), CCA is

entitled to discover any matter that bears on, or that reasonably could lead to other matters that

---

[12] Plaintiff provided no explanation for her failure to disclose her employment with BT in response to Defendant's Interrogatory No. 9 or when asked about employment subsequent to CCA at her deposition on January 11, 2008, *see* Pl. Dep., Vol. 1 at 15:4-10.
[13] Videotape at 10:32:43-33:05.
[14] Videotape at 10:49:56-50:40.

could bear on any issue that is or may be in the case. *See Oppenheimer Fund Inc. v. Sanders*,

437 U.S. 340, 351 (1978). Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. . .

FED. R. CIV. P. 26(b)(1). The scope of discovery under Rule 26 is broad. *Andrei Smith v. Café*

*Asia*, 246 F.R.D. 19, 20 (D.D.C. 2007) (citing *Friedman v. Bache Halsey Stuart Shields*, Inc.,

738 F.2d 1336, 1348-49 (D.C. Cir. 1984)). A party is allowed discovery of any matter which is

not privileged but relevant to a claim or defense. *Tequila Centinela, S.A. de C.V.*, 242 F.R.D. at

6. As this Court found in *Tequila Centinela*, "the term relevance at the discovery stage is a

broadly construed term and is given very liberal treatment." *Id.* Relevant information need not

be admissible at trial if it is reasonably calculated to lead to the discovery of admissible

evidence. *Id.*

   Plaintiff's refusal to provide information relating to matters which she has put at issue in

this case by raising claims under the DCFMLA and DCHRA is unwarranted. For example, CCA

is entitled to have access to information relating to money which Plaintiff allegedly had to

borrow from relatives, to determine: (1) whether her claim for damages is accurate, (2) what

other circumstances may have caused or contributed to her need to borrow money, and (3) the

actual amount of money which she had to borrow. Plaintiff has provided no support for her

assertion that information relating to money which she allegedly borrowed from family members

is privileged and confidential because her relatives are not parties to this lawsuit. Likewise,

CCA is entitled to information regarding Plaintiff's employment with BT,[15] including the wages

earned and benefits received, because it is relevant to Plaintiff's claim for lost wages. *See*

*Pinkney v. J.M.S., Inc.*, Civil Action No. WMN-99-3873, 2000 U.S. Dist. LEXIS 22551, *7 n. 3

(D. Md. May 17, 2000)("information concerning plaintiff's earnings and unemployment

compensation history is relevant to plaintiff's claim for back pay). Similarly, Plaintiff cannot

preclude CCA from inquiring into information relating to her husband, as she has identified him

as a witness, and CCA must be able to determine the extent to which he may have information

which bears on Plaintiff's claims. *See e.g.,* Pl. Interrog. Resp. No. 7.

CCA is entitled to information relating to Plaintiff's primary care physician, Dr. Poydras.

First, Plaintiff placed her medical condition at issue through the filing of her claims. In her

Complaint, she averred, "[d]ue to a continuous difference in treatment/Harassment [sic] I have

subsequently have [sic] developed 'Panick [sic] Attack Syndrome' a medical disorder due to

stress." She also based her claims of harassment and discrimination on events relating to her

pregnancy, miscarriage and an automobile accident. *See* Pl. Interrog. Resp. Nos. 1, 3-4. In

addition, Plaintiff is seeking damages for alleged pain and suffering. *See* Pl. Interrog. No. 8.

She testified that she sought treatment from Dr. Poydras for panic attack syndrome. *See supra* at

7-8. Clearly, Dr. Poydras may have information which bears on whether Plaintiff's alleged panic

anxiety syndrome is a disability under the DCHRA, whether the injuries which Plaintiff

allegedly sustained in an automobile accident would have entitled her to medical leave under the

DCFMLA, and whether CCA's actions or other events caused Plaintiff's panic attack syndrome.

CCA also has a right to information which may indicate the extent to which Plaintiff's alleged

pain and suffering were caused by events and circumstances unrelated to her employment with

---

[15] Plaintiff does not deny that BT is a former employer. Her objection is based upon the fact that CCA learned about her employment with BT from Kelly Services, Inc. pursuant to a subpoena *duces tecum*. *See supra* at 9.

and termination from CCA.

Finally, Plaintiff's concerns about confidentiality, which CCA denies is a legitimate basis for Plaintiff's refusal to answer questions posed at her deposition, are unwarranted.  CCA has endeavored to address Plaintiff's purported desire to preserve the confidentiality of matters which she has put at issue in this case.  CCA has no interest in utilizing information relating to Plaintiff's medical conditions, financial condition or familial relationships except to prepare its defense in this action.  As such, CCA is entitled to the discovery sought in this motion.

**B.    CCA LAWFULLY ISSUED SUPOENAS *DUCES TECUM* TO PLAINTIFF'S HEALTHCARE PROVIDERS AND EMPLOYERS.**

Plaintiff should be compelled to respond to questions relating to her medical records and employment history because CCA properly obtained such information by issuing subpoenas *duces tecum* in accordance with Rule 45 of the Federal Rules of Civil Procedure.  At issue are documents which CCA believed would be in the possession, custody and control of Plaintiff's healthcare providers whom she identified in her discovery responses, *see, e.g.* Pl. Interrog. Resp. No. 7, and employers subsequent to the termination of her employment with CCA.  This information bears on the issue of whether Plaintiff mitigated her damages as well as whether Plaintiff earned any income since the termination of her employment with CCA.

The Federal Rules of Civil Procedure provide the mechanism for obtaining information from nonparties.  While Rule 34 provides for requests for production of relevant documents and other tangible things to parties, it is Rule 45 that enables parties to seek information from nonparties.  Rule 34 states that, "[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." FED. R. CIV. P. 34(c).

Plaintiff does not dispute that Rule 45 authorizes CCA to obtain information from nonparties by issuing subpoenas *duces tecum*.  Rather, Plaintiff objects to CCA's subpoenas

*duces tecum* on two grounds which have no merit. First, Plaintiff objects that Plaintiff did not provide a signed release to CCA for either her medical or personnel records. Second, Plaintiff asserts counsel for CCA wrongfully invoked section 4-306 of the Health-General Article, Annotated Code of Maryland, when she issued the subpoenas *duces tecum* because she misrepresented herself as a law enforcement officer.

Plaintiff provides no authority for the requirement that a defendant obtain a plaintiff's written consent prior to requesting information from a third party pursuant to a Rule 45 subpoena *duces tecum*. To the contrary, neither federal nor state law imposes an obligation on a defendant to obtain a plaintiff's consent prior to issuing a subpoena *duces tecum* for either personnel or medical records. Usually, defendants are forced to get the court involved because plaintiffs have refused to provide release forms. In those cases, courts have denied motions to compel plaintiffs to sign release forms because Rule 45 provides a means to secure the records. *See Clark v. Vega Wholesale Inc.*, 181 F.R.D. 470, 471-72 (D. Nev. 1998) (no remedy in Rule 34 to compel plaintiff to sign medical records release but proper use of Federal Rules of Civil Procedure will allow defendant to secure records); *Neal v. Boulder*, 142 F.R.D. 325, 327-28 (D. Colo. 1992) ("Use of *Rules 34* and *45* is available and will allow for production of such documents as may be in the possession of physicians, hospitals and the like.") (emphasis in original). Here, CCA has properly invoked the Federal Rules of Civil Procedure to obtain documents which are not in Plaintiff's custody, possession or control.

Further, contrary to counsel of Plaintiff's interpretation of section 4-306 of the Health-General Article, Annotated Code of Maryland, that provision does not apply solely to law enforcement officers. Regardless, it is the Health Insurance and Portability Accountability Act of 1996 ("HIPAA") which establishes the basis for the release of medical information. *Law v.*

*Zuckerman*, 307 F. Supp.2d 705, 708 (D. Md. 2004).   Pursuant to the regulations implementing

HIPAA, when medical information is to be released in response to a subpoena or discovery

request, the health care provider must receive satisfactory assurance that: (1) there have been

good faith attempts to notify the subject of the protected health information in writing of the

request and that subject has been given the opportunity to object; <u>or</u> (2) reasonable efforts have

been made by the requesting party to obtain a qualified protective order.   45 C.F.R. §

164.512(e)(1)(ii)(A) and (B) (emphasis added).   HIPAA, however, does not preempt any state

law which is more stringent regarding the process for disclosing medical information.   *Law*, 307

F. Supp.2d at 708-09.

     In this case, Plaintiff's healthcare providers were located in Maryland.   Accordingly,

CCA considered Maryland law in its determination of the proper procedure for disclosure of

Plaintiff's medical records.   Section 4-306(b) specifically authorizes a healthcare provider to

disclose a medical record without a patient's authorization in response to a subpoena *duces*

*tecum* so long as the patient has received prior notice, is made aware that she can file a motion

for a protective order within 30 days of receiving notice of the subpoena *duces tecum* and

objections, if any, have been resolved.   MD. CODE ANN. Health-General Article § 4-306(b)

(LexisNexis 2008).   Section 4-306 does not provide to a patient more control than HIPAA over

the disclosure of medical records.   Therefore, CCA was obligated to follow the steps for which

HIPAA provides for disclosure, and simply incorporated the procedures set forth in section 4-

306 to demonstrate CCA's good faith effort to ensure that Plaintiff received notice before her

healthcare providers complied with the subpoenas *duce tecum.*

     Plaintiff's attorney indicated that she objected to the subpoenas.   Nevertheless, she never

moved for a protective order or to quash in a timely fashion.   CCA, therefore, lawfully requested

and obtained the requested records from Plaintiff's healthcare providers, and is entitled to elicit information from Plaintiff relating to those records.

## III.    CONCLUSION

As demonstrated above, Plaintiff's failure to cooperate with CCA's efforts to engage in discovery regarding its potential liability and Plaintiff's asserted damages is not justified. Plaintiff needs to be dispelled of the notion that she controls the type of information and witnesses to which CCA will have access in this case. CCA thus requests that this Court compel Plaintiff to appear for the continuation of her deposition at such time to be agreed upon between counsel for the parties, and direct her to answer all questions in accordance with Rule 26, except for those subject matters which may be subject to either the attorney-client privilege or the work product doctrine. CCA also requests that the Court extend the deadline for the submission of dispositive motions from April 11, 2008 to June 11, 2008 to allow sufficient time to complete Plaintiff's deposition. Further, CCA requests that this Court impose sanctions against Plaintiff in accordance with Rule 37(a)(5)(A), and award CCA its attorneys' fees and costs related to making this motion, including attorneys' fees. In the event that this Court awards sanctions, CCA respectfully requests that the Court allow the company to submit proof of the attorneys' fees and expenses incurred in this matter.

Dated:  March 13, 2008                    Respectfully submitted,

                                          By: _____

                                             Alison Nadine Davis
                                             adavis@fordharrison.com
                                             D.C. Bar No. 429700
                                             Dannie B. Fogleman
                                             D.C. Bar No. 414311
                                             dfogleman@fordharrison.com

                                             FORD & HARRISON LLP
                                             1300 19th Street, N.W., Suite 700
                                             Washington, DC  20036
                                             (202) 719-2000
                                             (202) 719-2077 (Facsimile)

                                             Attorneys for Defendant CCA of Tennessee, Inc.

DC:72754.1