# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA WALSTON JACKSON,

        Plaintiff,

    v.

CCA OF TENNESSEE, INC.,

        Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

---

**AFFIDAVIT OF ALISON N. DAVIS**

WASHINGTON,            )
                        )  ss.
DISTRICT OF COLUMBIA    )

      Alison N. Davis, Esq., being duly sworn, deposes and states that:

1.    I am an attorney duly licensed to practice before this Court.  I am a partner with the law

firm of Ford & Harrison LLP, counsel for Defendant CCA of Tennessee, Inc. ("CCA").  As

counsel in the above-captioned case, I am fully familiar with its procedural history and the

conduct of discovery in this case.

2.    This Affidavit is submitted in support of Defendant CCA of Tennessee, Inc.'s

Memorandum of Points and Authorities in Support of Rule 37 Motion to Compel Discovery.

3.    On November 14, 2007, I noticed the deposition of Plaintiff for November 29, 2007,

commencing at 10 a.m.  *See* Exhibit A.  I did not receive any communication from counsel for

Plaintiff until November 27, when she advised me that Plaintiff would not be able to attend her

deposition because of personal issues.  In light of the imminent deadline for conducting

discovery, the parties agreed to seek the Court's approval for an extension of time, and I agreed to reschedule Plaintiff's deposition.

4.     On December 20, 2007, I issued a second notice for Plaintiff's deposition to commence on January 11, 2008, at 10:00 a.m.  *See* Exhibit B.  I was unable to complete Plaintiff's deposition that day due to Plaintiff's daycare issues, and the continuation was scheduled for January 25, 2008.

5.     On January 22, 2008, I served subpoenas *duces tecum* on seven (7) of Plaintiff's healthcare providers who were identified in her responses to interrogatories and documents which she had produced, and one employer whom she identified during the first day of her deposition.  In particular, I notified Plaintiff that I had served subpoenas *duces tecum* on her healthcare providers.  *See* Exhibit C.  On January 24, 2008, I served a request for admissions and second request for production of documents on Plaintiff.

6.     On January 25, 2008, I received a voice mail message from counsel for Plaintiff in which she stated:

> Hi Miss Davis, this is Attorney Saundra White.  Um, got two things to tell you. First of all, um, want you to know that, um, that Miss Jackson will not be able to conduct her, um, deposition tomorrow because she has the flu.  So we will have to call you back when she's better.  Um, second of all you don't have any authorization from Renita or, from Miss Jackson, or myself with respect to those medical records so you can rest assured we are going to file a motion to quash it and we're also going to file a motion for sanctions because you know we indicated to you we would get those records to you okay you have no right to just go ahead and do a, um, subpoena.  I'm just really, really shocked at your behavior.  I really thought I was dealing with someone who was professional and understood the law in this area.  I'm just totally shocked at all the things you're doing, but anyway we just wanted you to know that, um, she won't be there tomorrow and I can't tell you when she's going to get well or whatever okay, and also we will be filing a motion to quash those subpoenas that you put on her health practitioners.  Thank you.  Bye, bye.

I provided counsel, in writing, the grounds for issuance of the subpoenas as well as authorizations for the release of Plaintiff's medical records. *See* Exhibit D. Plaintiff never returned the release forms or filed a motion to quash.

7.    On February 6, 2008, I provided to counsel for Plaintiff a proposed protective order in advance of CCA's production of documents to Plaintiff. *See* Exhibit G. The protective order was intended to limit the disclosure of documents which either party designated as confidential. Counsel for Plaintiff indicated that she wanted to make some changes to the protective order, but I never received any proposed revisions.

8.    On February 15, 2008, the parties agreed that Plaintiff would appear for a deposition on March 3, 2008, and I issued a notice of deposition. *See* Exhibit E.

9.    On the morning of March 3, I received an email which counsel for Plaintiff had sent to me at 11:59 p.m. on March 2. Counsel for Plaintiff advised me that she intended to obtain a protective order regarding documents which third parties had produced pursuant to the above-mentioned subpoenas *duces tecum* and requested my agreement not to use the documents during the deposition on March 3. *See* Exhibit F.

10.   Prior to the deposition, I reiterated my position regarding the propriety of the subpoenas *duces tecum* as stated in my January 25 letter. I also advised counsel for Plaintiff that we needed to contact the Court in an effort to resolve the dispute prior to the commencement of the deposition. The parties contacted chambers, and were directed to proceed with the deposition as much as possible. The Court was unable to address the parties' dispute at that time. The Court instructed the parties to proceed as much as possible with the deposition, and thereafter file a motion if necessary.

11.    The parties proceeded with Plaintiff's deposition on March 3.  After making a variety of inquiries of Plaintiff, it became clear to me that the deposition would not be productive, as a pattern was emerging in which Plaintiff provided evasive, incomplete and sometimes inconsistent answers to my questions.  Thus, the Court's involvement is necessary to resolve the pending discovery issues.

Alison N. Davis

Subscribed and sworn to before me
this 11th day of March, 2008.

_Cindy Campbell_
Notary Public

DC:72941.1

District of Columbia : SS
Subscribed and Sworn to before me, in my presence,
this 11TH day of March , 2008
Cindy Campbell
Notary Public, D.C.
My commission expires 3/14/2010

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA S. WALSTON JACKSON,

      Plaintiff,

    v.

CCA OF TENNESSEE, INC.,

      Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that, on November 29, 2007, beginning at 10:00 a.m., Defendant CCA of Tennessee, Inc., by and through its counsel, will take the deposition of Plaintiff Renita Walston Jackson, upon oral examination and pursuant to Rule 30 of the Federal Rules of Civil Procedure, at the offices of Ford & Harrison LLP, 1300 19th Street, Suite 700, Washington, DC  20036.  This deposition will be recorded by stenographic means and will continue day to day until completed.

Dated: November 14, 2007

Respectfully submitted,

By: _____
    Alison Nadine Davis, D.C. Bar No. 429700
    Dannie B. Fogleman, D.C. Bar No. 414311
    FORD & HARRISON LLP
    1300 19th Street, N.W., Suite 700
    Washington, DC  20036
    (202) 719-2000
    (202) 719-2077 (facsimile)
    adavis@fordharrison.com
    dfogleman@fordharrison.com

    Attorneys for Defendant CCA of Tennessee, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that she caused a copy of the foregoing

Notice of Deposition to be served upon the following counsel of record via facsimile and U.S.

Mail, postage prepaid, on November 14, 2007:

> L. Saundra White
> 3549 Crain Highway, # 107
> Bowie, MD  20716

Alison N. Davis

DC:69693.1

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA S. WALSTON JACKSON,

       Plaintiff,

    v.

CCA OF TENNESSEE, INC.,

       Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that, on January 11, 2008, beginning at 10:00 a.m., Defendant CCA of Tennessee, Inc., by and through its counsel, will take the deposition of Plaintiff Renita Walston Jackson, upon oral examination and pursuant to Rule 30 of the Federal Rules of Civil Procedure, at the offices of Ford & Harrison LLP, 1300 19th Street, Suite 700, Washington, DC 20036. This deposition will be recorded by stenographic means and will continue day to day until completed.

Dated: December 20, 2007

Respectfully submitted,

By: _____

Alison Nadine Davis, D.C. Bar No. 429700
Dannie B. Fogleman, D.C. Bar No. 414311
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 700
Washington, DC 20036
(202) 719-2000
(202) 719-2077 (facsimile)
adavis@fordharrison.com
dfogleman@fordharrison.com

Attorneys for Defendant CCA of Tennessee, Inc.

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that she caused a copy of the foregoing

Notice of Deposition to be served upon the following counsel of record via facsimile and U.S.

Mail, postage prepaid, on December 20, 2007:

      L. Saundra White
      3549 Crain Highway, # 107
      Bowie, MD  20716

Alison N. Davis

DC:70553.1

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA WALSTON JACKSON,

      Plaintiff,

    v.

CCA OF TENNESSEE, INC.,

      Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

## NOTICE TO RENITA WALSTON JACKSON

IN COMPLIANCE WITH § 4-306 OF THE HEALTH-GENERAL ARTICLE, ANNOTATED CODE OF MARYLAND, TAKE NOTE that medical records regarding Renita Walston Jackson, have been subpoenaed from Prince Georges Hospital Center at 3001 Hospital Drive, Cheverly, MD 20785 pursuant to the attached subpoena and § 4-306 of the Health-General Article, Annotated Code of Maryland. This subpoena does not seek production of mental health records.

Please examine these papers carefully, IF YOU HAVE ANY OBJECTION TO THE PRODUCTION OF THESE DOCUMENTS, YOU MUST FILE A MOTION FOR A PROTECTIVE ORDER OR A MOTION TO QUASH THE SUBPOENA ISSUED FOR THESE DOCUMENTS PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE NO LATER THAN THIRTY (30) DAYS FROM THE DATE THIS NOTICE IS MAILED. For example, a protective order may be granted if the records are not relevant to the issues in this case, the request unduly invades your privacy, or causes you specific harm.

Also attached to this form is a copy of the subpoena *duces tecum* issued for these records.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA WALSTON JACKSON,

        Plaintiff,

    v.

CCA OF TENNESSEE, INC.,

        Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

---

## NOTICE TO RENITA WALSTON JACKSON

IN COMPLIANCE WITH § 4-306 OF THE HEALTH-GENERAL ARTICLE, ANNOTATED CODE OF MARYLAND, TAKE NOTE that medical records regarding Renita Walston Jackson, have been subpoenaed from Riverside Primary Care of District Heights, a division of Riverside Primary Care, LLC at 6400 Marlboro Pike, District Heights, MD 20747 pursuant to the attached subpoena and § 4-306 of the Health-General Article, Annotated Code of Maryland. This subpoena does not seek production of mental health records.

Please examine these papers carefully, IF YOU HAVE ANY OBJECTION TO THE PRODUCTION OF THESE DOCUMENTS, YOU MUST FILE A MOTION FOR A PROTECTIVE ORDER OR A MOTION TO QUASH THE SUBPOENA ISSUED FOR THESE DOCUMENTS PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE NO LATER THAN THIRTY (30) DAYS FROM THE DATE THIS NOTICE IS MAILED. For example, a protective order may be granted if the records are not relevant to the issues in this case, the request unduly invades your privacy, or causes you specific harm.

Also attached to this form is a copy of the subpoena *duces tecum* issued for these records.

If you believe you need further legal advice about this matter, you should consult your attorney.

Dated: January 22, 2008                    Respectfully submitted,

                                           By: _____
                                               Alison Nadine Davis
                                               D.C. Bar No. 429700
                                               adavis@fordharrison.com
                                               Dannie B. Fogleman
                                               D.C. Bar No. 414311
                                               dfogleman@fordharrison.com

                                           FORD & HARRISON LLP
                                           1300 19th Street, N.W., Suite 700
                                           Washington, DC  20036
                                           (202) 719-2000
                                           (202) 719-2077 (Facsimile)

                                           Attorneys for Defendant CCA of Tennessee, Inc.


## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of January, 2008, I caused a true and accurate copy of the foregoing Notice to be served, via facsimile and certified mail, return receipt requested upon:

    L. Saundra White
    3549 Crain Highway, # 107
    Bowie, MD  20716

    Counsel for Plaintiff


                                           _____
                                           Alison N. Davis

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA WALSTON JACKSON,

      Plaintiff,

      v.

CCA OF TENNESSEE, INC.,

      Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

## NOTICE TO RENITA WALSTON JACKSON

IN COMPLIANCE WITH § 4-306 OF THE HEALTH-GENERAL ARTICLE, ANNOTATED CODE OF MARYLAND, TAKE NOTE that medical records regarding Renita Walston Jackson, have been subpoenaed from The Metropolitan Washington Orthopedic Association at 6144 Oxon Hill Road, Oxon Hill, MD 20745 pursuant to the attached subpoena and § 4-306 of the Health-General Article, Annotated Code of Maryland. This subpoena does not seek production of mental health records.

Please examine these papers carefully, IF YOU HAVE ANY OBJECTION TO THE PRODUCTION OF THESE DOCUMENTS, YOU MUST FILE A MOTION FOR A PROTECTIVE ORDER OR A MOTION TO QUASH THE SUBPOENA ISSUED FOR THESE DOCUMENTS PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE NO LATER THAN THIRTY (30) DAYS FROM THE DATE THIS NOTICE IS MAILED. For example, a protective order may be granted if the records are not relevant to the issues in this case, the request unduly invades your privacy, or causes you specific harm.

Also attached to this form is a copy of the subpoena *duces tecum* issued for these records.

If you believe you need further legal advice about this matter, you should consult your attorney.

Dated: January 22, 2008                     Respectfully submitted,

                                            By: _____
                                            Alison Nadine Davis
                                            D.C. Bar No. 429700
                                            adavis@fordharrison.com
                                            Dannie B. Fogleman
                                            D.C. Bar No. 414311
                                            dfogleman@fordharrison.com

                                            FORD & HARRISON LLP
                                            1300 19th Street, N.W., Suite 700
                                            Washington, DC  20036
                                            (202) 719-2000
                                            (202) 719-2077 (Facsimile)

                                            Attorneys for Defendant CCA of Tennessee, Inc.


## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of January, 2008, I caused a true and accurate copy of the foregoing Notice to be served, via facsimile and certified mail, return receipt requested upon:

    L. Saundra White
    3549 Crain Highway, # 107
    Bowie, MD  20716

    Counsel for Plaintiff


    Alison N. Davis

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA WALSTON JACKSON,

       Plaintiff,

    v.

CCA OF TENNESSEE, INC.,

       Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

## NOTICE TO RENITA WALSTON JACKSON

IN COMPLIANCE WITH § 4-306 OF THE HEALTH-GENERAL ARTICLE, ANNOTATED CODE OF MARYLAND, TAKE NOTE that medical records regarding Renita Walston Jackson, have been subpoenaed from Jong S. Lee, M.D.,P.A. at 6400 Marlboro Pike, District Heights, MD 20747 pursuant to the attached subpoena and § 4-306 of the Health-General Article, Annotated Code of Maryland.  This subpoena does not seek production of mental health records.

Please examine these papers carefully, IF YOU HAVE ANY OBJECTION TO THE PRODUCTION OF THESE DOCUMENTS, YOU MUST FILE A MOTION FOR A PROTECTIVE ORDER OR A MOTION TO QUASH THE SUBPOENA ISSUED FOR THESE DOCUMENTS PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE NO LATER THAN THIRTY (30) DAYS FROM THE DATE THIS NOTICE IS MAILED.  For example, a protective order may be granted if the records are not relevant to the issues in this case, the request unduly invades your privacy, or causes you specific harm.

Also attached to this form is a copy of the subpoena *duces tecum* issued for these records.

If you believe you need further legal advice about this matter, you should consult your attorney.

Dated: January 22, 2008

Respectfully submitted,

By: _____

Alison Nadine Davis
D.C. Bar No. 429700
adavis@fordharrison.com
Dannie B. Fogleman
D.C. Bar No. 414311
dfogleman@fordharrison.com

FORD & HARRISON LLP
1300 19th Street, N.W., Suite 700
Washington, DC 20036
(202) 719-2000
(202) 719-2077 (Facsimile)

Attorneys for Defendant CCA of Tennessee, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of January, 2008, I caused a true and accurate copy of the foregoing Notice to be served, via facsimile and certified mail, return receipt requested upon:

L. Saundra White
3549 Crain Highway, # 107
Bowie, MD 20716

Counsel for Plaintiff

Alison N. Davis

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA WALSTON JACKSON,

       Plaintiff,

    v.

CCA OF TENNESSEE, INC.,

       Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

## NOTICE TO RENITA WALSTON JACKSON

IN COMPLIANCE WITH § 4-306 OF THE HEALTH-GENERAL ARTICLE, ANNOTATED CODE OF MARYLAND, TAKE NOTE that medical records regarding Renita Walston Jackson, have been subpoenaed from Dr. Jalal A. Saied at 6400 Marlboro Pike, District Heights, MD 20747 pursuant to the attached subpoena and § 4-306 of the Health-General Article, Annotated Code of Maryland. This subpoena does not seek production of mental health records.

Please examine these papers carefully, IF YOU HAVE ANY OBJECTION TO THE PRODUCTION OF THESE DOCUMENTS, YOU MUST FILE A MOTION FOR A PROTECTIVE ORDER OR A MOTION TO QUASH THE SUBPOENA ISSUED FOR THESE DOCUMENTS PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE NO LATER THAN THIRTY (30) DAYS FROM THE DATE THIS NOTICE IS MAILED. For example, a protective order may be granted if the records are not relevant to the issues in this case, the request unduly invades your privacy, or causes you specific harm.

Also attached to this form is a copy of the subpoena *duces tecum* issued for these records.

If you believe you need further legal advice about this matter, you should consult your attorney.

Dated: January 22, 2008                    Respectfully submitted,

                                           By: _____
                                               Alison Nadine Davis
                                               D.C. Bar No. 429700
                                               adavis@fordharrison.com
                                               Dannie B. Fogleman
                                               D.C. Bar No. 414311
                                               dfogleman@fordharrison.com

                                           FORD & HARRISON LLP
                                           1300 19th Street, N.W., Suite 700
                                           Washington, DC  20036
                                           (202) 719-2000
                                           (202) 719-2077 (Facsimile)

                                           Attorneys for Defendant CCA of Tennessee, Inc.


## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of January, 2008, I caused a true and accurate copy of the foregoing Notice to be served, via facsimile and certified mail, return receipt requested upon:

    L. Saundra White
    3549 Crain Highway, # 107
    Bowie, MD  20716

    Counsel for Plaintiff


                                           _____
                                           Alison N. Davis

DC:71504.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA WALSTON JACKSON,

      Plaintiff,

      v.

CCA OF TENNESSEE, INC.,

      Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

## NOTICE TO RENITA WALSTON JACKSON

IN COMPLIANCE WITH § 4-306 OF THE HEALTH-GENERAL ARTICLE, ANNOTATED CODE OF MARYLAND, TAKE NOTE that medical records regarding Renita Walston Jackson, have been subpoenaed from Dr. Florentino Loya at 6400 Marlboro Pike, District Heights, MD 20747 pursuant to the attached subpoena and § 4-306 of the Health-General Article, Annotated Code of Maryland. This subpoena does not seek production of mental health records.

Please examine these papers carefully, IF YOU HAVE ANY OBJECTION TO THE PRODUCTION OF THESE DOCUMENTS, YOU MUST FILE A MOTION FOR A PROTECTIVE ORDER OR A MOTION TO QUASH THE SUBPOENA ISSUED FOR THESE DOCUMENTS PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE NO LATER THAN THIRTY (30) DAYS FROM THE DATE THIS NOTICE IS MAILED. For example, a protective order may be granted if the records are not relevant to the issues in this case, the request unduly invades your privacy, or causes you specific harm.

Also attached to this form is a copy of the subpoena issued for these records.

If you believe you need further legal advice about this matter, you should consult your attorney.

Dated: January 22, 2008                    Respectfully submitted,

By: _____

Alison Nadine Davis
D.C. Bar No. 429700
adavis@fordharrison.com
Dannie B. Fogleman
D.C. Bar No. 414311
dfogleman@fordharrison.com

FORD & HARRISON LLP
1300 19th Street, N.W., Suite 700
Washington, DC 20036
(202) 719-2000
(202) 719-2077 (Facsimile)

Attorneys for Defendant CCA of Tennessee, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of January, 2008, I caused a true and accurate copy of the foregoing Notice to be served, via facsimile and certified mail, return receipt requested upon:

L. Saundra White
3549 Crain Highway, # 107
Bowie, MD 20716

Counsel for Plaintiff

Alison N. Davis

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA WALSTON JACKSON,

        Plaintiff,

    v.

CCA OF TENNESSEE, INC.,

        Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

## NOTICE TO RENITA WALSTON JACKSON

IN COMPLIANCE WITH § 4-306 OF THE HEALTH-GENERAL ARTICLE, ANNOTATED CODE OF MARYLAND, TAKE NOTE that medical records regarding Renita Walston Jackson, have been subpoenaed from Dr. Piotr L. Grojec at 6400 Marlboro Pike, District Heights, MD 20747 pursuant to the attached subpoena and § 4-306 of the Health-General Article, Annotated Code of Maryland.  This subpoena does not seek production of mental health records.

Please examine these papers carefully, IF YOU HAVE ANY OBJECTION TO THE PRODUCTION OF THESE DOCUMENTS, YOU MUST FILE A MOTION FOR A PROTECTIVE ORDER OR A MOTION TO QUASH THE SUBPOENA ISSUED FOR THESE DOCUMENTS PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE NO LATER THAN THIRTY (30) DAYS FROM THE DATE THIS NOTICE IS MAILED.  For example, a protective order may be granted if the records are not relevant to the issues in this case, the request unduly invades your privacy, or causes you specific harm.

Also attached to this form is a copy of the subpoena *duces tecum* issued for these records.

If you believe you need further legal advice about this matter, you should consult your attorney.

Dated: January 22, 2008                         Respectfully submitted,

                                                By: _____
                                                Alison Nadine Davis
                                                D.C. Bar No. 429700
                                                adavis@fordharrison.com
                                                Dannie B. Fogleman
                                                D.C. Bar No. 414311
                                                dfogleman@fordharrison.com

                                                FORD & HARRISON LLP
                                                1300 19th Street, N.W., Suite 700
                                                Washington, DC  20036
                                                (202) 719-2000
                                                (202) 719-2077 (Facsimile)

                                                Attorneys for Defendant CCA of Tennessee, Inc.


## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of January, 2008, I caused a true and accurate copy of the foregoing Notice to be served, via facsimile and certified mail, return receipt requested upon:

L. Saundra White
3549 Crain Highway, # 107
Bowie, MD  20716

Counsel for Plaintiff


                                                _____
                                                Alison N. Davis

# EXHIBIT D

LAW OFFICES

# F O R D  &  H A R R I S O N LLP

A LIMITED LIABILITY PARTNERSHIP OF PROFESSIONAL ASSOCIATIONS AND INDIVIDUALS

1300 19th Street, N.W., Suite 700, Washington, D.C. 20036
Tel (202) 719-2000  Fax (202) 719-2077
www.fordharrison.com

Writer's Direct Dial:

ALISON N. DAVIS
202-719-2017
adavis@fordharrison.com

January 25, 2008

**VIA E-MAIL & U.S. MAIL**

L. Saundra White
White Bay & Henderson, LLC
1401 Mercantile Lane, Suite 200C
Largo, MD  20774

    Re:    Renita Walston Jackson v. CCA of Tennessee, Inc.
           Civil Action No. 1:06-CV-616-RCL
           <u>Meet & Confer</u>

Dear Ms. White:

    This letter is in response to the voice mail message which you left yesterday regarding the subpoenas *duces tecum* which were served on Ms. Walston Jackson's healthcare providers. It is my understanding based upon your message that you intend to file a motion to quash these subpoenas and seek sanctions. As you know under the Local Rules of the United States District Court for the District of Columbia, prior to filing a nondispositive motion, you must confer with the other party in person or by telephone. I assume your voice mail message was an effort to comply with Local Rule 7(m). Accordingly, this letter serves as CCA of Tennessee, Inc.'s ("CCA's") response to your representation that you anticipate filing a motion to quash and for sanctions.

    In your message to me, you stated:

    Hi Miss Davis, this is Attorney Saundra White. Um, got two things to tell you. First of all, um, want you to know that, um, that Miss Jackson will not be able to conduct her, um, deposition tomorrow because she has the flu. So we will have to call you back when she's better. Um, second of all you don't have any authorization from Renita or, from Miss Jackson, or myself with respect to those medical records so you can rest assured we are going to file a motion to quash it and we're also going to file a motion for sanctions because you know we indicated to you we would get those records to you okay you have no right to just go ahead and do a, um, subpoena. I'm just really, really shocked at your behavior. I really thought I was dealing with someone who was professional and understood the law in this area. I'm just totally shocked at all the things you're doing, but anyway we just wanted you to know that, um, she won't be there tomorrow and I can't tell you when she's going to get well or whatever okay, and

L. Saundra White
January 25, 2008
Page 2

also we will be filing a motion to quash those subpoenas that you put on her health practitioners. Thank you. Bye, bye.

At the outset, let me make clear that CCA is not opposed to Ms. Walston Jackson facilitating the process of CCA obtaining her medical records by providing to CCA an authorization for release of medical records. To that end, we are enclosing a form which she can execute and return to us. Upon receipt, we will immediately forward it to her healthcare providers. Further, while we would appreciate receiving copies of any medical records in Ms. Walston Jackson's possession, custody or control relating to hospitalization or treatment received for her purported panic attack syndrome, pregnancy, automobile accident or any conditions which she believes CCA caused, as they are responsive to Request No. 11 of our Request for Production of Documents to Plaintiff, we are not limited to discovering those documents.

Ms. Walston Jackson has placed her medical condition at issue through the filing of her claims. In her Complaint, she avers, "[d]ue to a continuous difference in treatment/Harassment [sic] I have subsequently have [sic] developed 'Panick [sic] Attack Syndrome' a medical disorder due to stress." She also bases her claims of harassment and discrimination on events relating to her pregnancy, miscarriage and an automobile accident. *See* Responses to Interrogatories Nos. 1, 3-4. Interrogatory No. 7 asked:

> If you have consulted and/or treated with any medical doctor, physician, psychiatrist, therapist, or other healthcare professional as a result of the allegations set forth in your Complaint, identify each such health care provider and state: (a) the date(s) on which you consulted the health care professional; (b) the reason for seeking such treatment; and (c) the date on which you ceased to be under the care of such health care professional.

In her response, Ms. Walston Jackson identified Prince Georges Hospital Center, Riverside Primary Care of District Heights, Metropolitan Washington Orthopedic Ass. [sic], Dr. Jong S. Lee, Dr. Jalal A. Saied and Dr. Florentino N. Loya. She also produced copies of doctors' notes. In addition, Ms. Walston Jackson is seeking damages for alleged pain and suffering. *See* Response to Interrogatory No. 8. Clearly, any information in her healthcare providers' files could lead to the discovery of information which is relevant to her claims and CCA's defense.

Neither the Health Insurance Portability and Accountability Act ("HIPAA") nor Maryland law require CCA to obtain Ms. Walston Jackson's consent to the release of her medical records where she has put her medical condition at issue. Section 4-306 of the Health-General Article, Annotated Code of Maryland and 45 C.F.R. § 164.512(a)(2), (e)(1)(ii) and (e)(1)(iii) authorize a healthcare provider to release a medical record without the patient's authorization in response to a subpoena so long as the patient has received prior notice and objections, if any, have been resolved. *See* Attachments A and B. CCA provided Ms. Walston Jackson notice and the opportunity to object to these subpoenas. Her objection regarding the lack of a release is frivolous. We, therefore, are entitled to obtain the requested records from Ms. Walston Jackson's health care providers without her consent as they relate to Ms. Walston Jackson's claims and injuries.

FORD & HARRISON LLP

L. Saundra White
January 25, 2008
Page 3


     For the reasons set forth above, if Ms. Walston Jackson's sole objection to the issuance of these subpoenas is the lack of an authorization to release records, that situation can be quickly remedied. We are under no obligation, however, to withdraw these subpoenas pending receipt of her authorization. We trust that you will reconsider your plan to file a motion to quash and for sanctions as such motion would be without merit.

     Sincerely,

     ALISON N. DAVIS


Enclosures

DC:71701.1

FORD & HARRISON LLP



1 of 1 DOCUMENT

Annotated Code of Maryland
Copyright 2007 by Matthew Bender and Company, Inc., a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2007 Regular and Special Sessions ***
*** plus updates effective January 1, 2008 ***
*** Annotations through November 14, 2007 ***

HEALTH - GENERAL
TITLE 4. STATISTICS AND RECORDS
SUBTITLE 3. CONFIDENTIALITY OF MEDICAL RECORDS

GO TO MARYLAND STATUTES ARCHIVE DIRECTORY

*Md. HEALTH-GENERAL Code Ann. § 4-306 (2007)*

§ 4-306. Same -- Investigations

(a) Compulsory process. -- In this section, "compulsory process" includes a subpoena, summons, warrant, or court order that appears on its face to have been issued on lawful authority.

(b) Permitted disclosures. -- A health care provider shall disclose a medical record without the authorization of a person in interest:

(1) To a unit of State or local government, or to a member of a multidisciplinary team assisting the unit, for purposes of investigation or treatment in a case of suspected abuse or neglect of a child or an adult, subject to the following conditions:

(i) The health care provider shall disclose only the medical record of a person who is being assessed in an investigation or to whom services are being provided in accordance with Title 5, Subtitle 7 or Title 14, Subtitle 3 of the Family Law Article;

(ii) The health care provider shall disclose only the information in the medical record that will, in the professional judgment of the provider, contribute to the:

1. Assessment of risk;

2. Development of a service plan;

3. Implementation of a safety plan; or

4. Investigation of the suspected case of abuse or neglect; and

(iii) The medical record may be redisclosed as provided in §§ 1-201, 1-202, 1-204, and 1-205 of the Human Services Article;

(2) Subject to the additional limitations for a medical record developed primarily in connection with the provision of mental health services in § 4-307 of this subtitle, to health professional licensing and disciplinary boards, in accordance with a subpoena for medical records for the sole purpose of an investigation regarding:

(i) Licensure, certification, or discipline of a health professional; or

(ii) The improper practice of a health profession;

Md. HEALTH-GENERAL Code Ann. § 4-306

(3) To a health care provider or the provider's insurer or legal counsel, all information in a medical record relating to a patient or recipient's health, health care, or treatment which forms the basis for the issues of a claim in a civil action initiated by the patient, recipient, or person in interest;

(4) Notwithstanding any privilege in law, as needed, to a medical review committee as defined in *§ 1-401 of the Health Occupations Article* or a dental review committee as defined in *§ 4-501 of the Health Occupations Article*;

(5) To another health care provider as provided in § 19-308.2 or § 10-807 of this article;

(6) Subject to the additional limitations for a medical record developed primarily in connection with the provision of mental health services in § 4-307 of this subtitle and except as otherwise provided in items (2), (7), and (8) of this subsection, in accordance with compulsory process, if the health care provider receives:

(i) 1. A written assurance from the party or the attorney representing the party seeking the medical records that:

A. A person in interest has not objected to the disclosure of the designated medical records and 30 days have elapsed since the notice was sent; or

B. The objections of a person in interest have been resolved and the request for disclosure is in accordance with the resolution;

2. Proof that service of the subpoena, summons, warrant, or court order has been waived by the court for good cause; or

3. A copy of an order entered by a court expressly authorizing disclosure of the designated medical records; and

(ii) For disclosures made under item (i)1 of this paragraph, copies of the following items that were mailed by certified mail to the person in interest by the person requesting the disclosure at least 30 days before the records are to be disclosed:

1. The subpoena, summons, warrant, or court order seeking the disclosure or production of the records;

2. This section; and

3. A notice in the following form or a substantially similar form:

In the

Plaintiffs

v.                          For

Defendants

Case No.:

NOTICE TO (Patient Name)
IN COMPLIANCE WITH § 4-306 OF THE HEALTH - GENERAL ARTICLE, ANNOTATED CODE OF MARYLAND

Md. HEALTH-GENERAL Code Ann. § 4-306

TAKE NOTE that medical records regarding (Patient Name), have been subpoenaed from the (Name and address of Health Care Provider) pursuant to the attached subpoena and § 4-306 of the Health - General Article, Annotated Code of Maryland. This subpoena    does    does not (mark one) seek production of mental health records.

Please examine these papers carefully. IF YOU HAVE ANY OBJECTION TO THE PRODUCTION OF THESE DOCUMENTS, YOU MUST FILE A MOTION FOR A PROTECTIVE ORDER OR A MOTION TO QUASH THE SUBPOENA ISSUED FOR THESE DOCUMENTS UNDER MARYLAND RULES 2-403 and 2-510 NO LATER THAN THIRTY (30) DAYS FROM THE DATE THIS NOTICE IS MAILED. For example, a protective order may be granted if the records are not relevant to the issues in this case, the request unduly invades your privacy, or causes you specific harm.

Also attached to this form is a copy of the subpoena duces tecum issued for these records.

If you believe you need further legal advice about this matter, you should consult your attorney.

Attorney
(Firm Name
Attorney address
Attorney phone number)

Attorneys for (Name of Party
Represented)

Certificate of Service

Md. HEALTH-GENERAL Code Ann. § 4-306

     I hereby certify that a copy of the foregoing notice was mailed, first-class postage prepaid, this     day of    , 200  to

Patient

Each Counsel in Case

Attorney

    (7) Subject to the additional limitations for a medical record developed primarily in connection with the provision of mental health services in § 4-307 of this subtitle, to grand juries, prosecution agencies, law enforcement agencies or their agents or employees to further an investigation or prosecution, pursuant to a subpoena, warrant, or court order for the sole purposes of investigating and prosecuting criminal activity, provided that the prosecution agencies and law enforcement agencies have written procedures to protect the confidentiality of the records;

    (8) To the Maryland Insurance Administration when conducting an investigation or examination pursuant to Title 2, Subtitle 2 of the Insurance Article, provided that the Insurance Administration has written procedures to maintain the confidentiality of the records;

    (9) To a State or local child fatality review team established under Title 5, Subtitle 7 of this article as necessary to carry out its official functions; or

    (10) To a local domestic violence fatality review team established under Title 4, Subtitle 7 of the Family Law Article as necessary to carry out its official functions.

  (c) Requests; documentation. -- When a disclosure is sought under this section:

    (1) A written request for disclosure or written confirmation by the health care provider of an oral request that justifies the need for disclosure shall be inserted in the medical record of the patient or recipient; and

    (2) Documentation of the disclosure shall be inserted in the medical record of the patient or recipient.

**HISTORY:** 1990, ch. 480, § 2; 1993, ch. 83; 1994, ch. 3, § 1; 1997, ch. 185; 1998, ch. 21, § 1; 1999, chs. 355, 356; 2000, ch. 270, § 2; 2002, ch. 19, § 9; 2005, chs. 233, 503; 2006, ch. 44; 2007, ch. 8, § 1.

**NOTES:**
EFFECT OF AMENDMENTS. --Chapter 233, Acts 2005, effective July 1, 2005, made minor stylistic changes in (b)(8) and (9) and added (b)(10).

Md. HEALTH-GENERAL Code Ann. § 4-306

Chapter 503, Acts 2005, effective July 1, 2005, rewrote (b)(6).

Chapter 44, Acts 2006, enacted April 7, 2006, pursuant to *art. II, § 17(b) of the Maryland Constitution* and effective from the date of enactment, substituted "item (i)1" for "item (i)" in (b)(6)(ii).

Section 1, ch. 8, Acts 2007, effective October 1, 2007, substituted "§§ 1-201, 1-202, 1-204, and 1-205 of the Human Services Article" for "*Article 88A, § 6 of the Code*" in (b)(1)(iii).

EDITOR'S NOTE. --Section 9, ch. 19, Acts 2002, provides that "any reference in the Annotated Code of Maryland rendered obsolete by an Act of the General Assembly of 2002 shall be corrected by the publisher of the Annotated Code, in consultation with and subject to the approval of the Department of Legislative Services, with no further action required by the General Assembly. The publisher shall adequately describe any such correction in an editor's note following the section affected." Pursuant to § 9 of ch. 19, and because of the amendment by ch. 158, Acts 2002, the reference in (b)(4) to *§ 14-501 of the Health Occupations Article* has been changed to read "§ 1-401."

Chapters 233 and 503, Acts 2005, both amended (b). Neither of the 2005 amendments referred to the other, and effect has been given to each, as they amended separate subdivisions.

SCOPE. --Paragraph (b) (7) of this section is not specifically subject to the additional limitations set forth in § 4-307 of this subtitle. *Shady Grove Psychiatric Group v. State*, 128 Md. App. 163, 736 A.2d 1168 (1999).

APPLICABILITY --Pursuant to *42 U.S.C.S. § 1320d-7*(a)(2)(B), the ex parte contacts between a doctor and an individual's treating physician in the individual's medical malpractice action were governed by federal law, rather than Maryland law, where (b)(3) did not afford patients more control over their medical records, and as a result, Maryland law was not more restrictive than the permissive rule governing disclosure set forth in the Health Insurance and Portability Accountability Act of 1996 (HIPAA), *42 U.S.C.S. § 1320d* et seq. *Law v. Zuckerman*, 307 F. Supp. 2d 705 (D. Md. 2004).

DUTY TO DISCLOSE RECORDS TO MEDICAL REVIEW COMMITTEE --Trial court did not err in denying the clients' motion to quash subpoena that the State social worker examining board issued to obtain a complete patient file on them for its investigation of the licensed social worker and whether the social worker failed to report the one client's abuse of his granddaughter to authorities as the licensed social worker was statutorily required to do. The clients did not have a statutory right to an order quashing the subpoena at issue, and the State's compelling interest in disciplining its social workers and the limited disclosure requested outweighed any constitutional interest the clients had in keeping the contents of the file private. *Doe v. Md. Bd. of Soc. Workers*, 154 Md. App. 520, 840 A.2d 744 (2004), aff'd sub nom. *Doe v. Md. Bd. of Soc. Work Examiners*, 384 Md. 161, 862 A.2d 996 (2004).

BOARD'S FINDING THAT DOCTOR FAILED TO COOPERATE PROPERLY REVERSED. --Trial court judgment reversing a decision of the Maryland State Board of Physicians, which found a doctor guilty of failing to cooperate with a lawful investigation of the Board, in violation of *§ 14-404(a)(33) of the Health Occupations Article*, was upheld on appeal as it was determined by the facts found by the Board, as supported by substantial evidence in the records, that the doctor, as a matter of law, did not fail to cooperate with a lawful investigation of the Board by not furnishing three patients' psychiatric records to the Board, in response to a subpoena, until the patients withdrew their privacy objection, with regard to a complaint that the doctor was overmedicating the three patients. The reviewing court found that the Board's interest in obtaining the patients' psychiatric records to investigate the standard of care allegation leveled by the complainant against the doctor did not outweigh the patients' privacy interests in those highly personal records and that, had either the Board, the doctor, or the patients sought court intervention in the period of time soon after the subpoena was issued, the proper ruling by the court would have been that the Board was not entitled to the records in question because disclosing them would violate the patients' constitutional rights. *Md. State Bd. of Physicians v. Eist*, -- Md. App. --, 932 A.2d 783 (2007).

STATE MEDICAL BOARD'S RIGHT TO OBTAIN RECORDS. --Maryland State Board of Physicians is statutorily entitled to obtain records without the consent of the patients. When the patients make a privacy challenge to the disclosure of their records, however, the Board's ultimate right to obtain the records depends upon whether its interest in assuring the information they contain is a compelling one that outweighs the patients' federal constitutional interests in having the information in the records remain private. *United States v. Westinghouse Electric Corp.*, 638 F. 2d 570 (3rd Cir. 1980) furnishes the standard by which to answer that question; and because the question is constitutional, appellate review of the same is de novo. *Md. State Bd. of Physicians v. Eist*, -- Md. App. --, 932 A.2d 783 (2007).

Md. HEALTH-GENERAL Code Ann. § 4-306

PRODUCTION OF SUBPOENAED DOCUMENTS --Maryland Board of Physician Quality Assurance (now Board of Physicians) did not err by revoking a doctor's medical license because she failed to cooperate with a lawful investigation by refusing to produce requested medical records of patients in response to a subpoena, as no federal or State law legally excused the doctor from complying with the Board's subpoena; the Board's action did not exceed its authority, was not unlawful, and was supported by competent, material, and substantial evidence. *Solomon v. State Bd. of Physician Quality Assur.*, 155 Md. App. 687, 845 A.2d 47 (2003).

PROCEDURES FOR PROTECTION OF CONFIDENTIALITY. --Since a health care provider is required to disclose a medical record to a prosecution agency pursuant to a subpoena issued in a criminal investigation only if the agency first proves that it has written procedures to protect the confidentiality of that record, where the record did not reflect any proof of such procedures, the court erred when it ordered the provider to comply with the subpoena. *Shady Grove Psychiatric Group v. State*, 128 Md. App. 163, 736 A.2d 1168 (1999).

QUOTED IN *Warner v. Lerner*, 348 Md. 733, 705 A.2d 1169 (1998); *Butler-Tulio v. Scroggins*, 139 Md. App. 122, 774 A.2d 1209 (2001); *Bond v. Messerman*, 162 Md. App. 93, 873 A.2d 417 (2005), aff'd, 391 Md. 706, 895 A.2d 990, 2006 Md. LEXIS 170 (2006); *Boukadoum v. Hubanks*, 239 F.R.D. 427 (D. Md. 2006).

# B

LEXSTAT 45 C.F.R. 164.512

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2008, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 16, 2008 ISSUE OF ***
*** THE FEDERAL REGISTER WITH THE EXCEPTION OF 73 FR 2712, JANUARY 15, 2008 ***

TITLE 45 -- PUBLIC WELFARE
SUBTITLE A -- DEPARTMENT OF HEALTH AND HUMAN SERVICES
SUBCHAPTER C   ADMINISTRATIVE DATA STANDARDS AND RELATED REQUIREMENTS
PART 164 -- SECURITY AND PRIVACY
SUBPART E -- PRIVACY OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION

**Go to the CFR Archive Directory**

*45 CFR 164.512*

§ 164.512 Uses and disclosures for which an authorization or opportunity to agree or object is not required.

A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section. When the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section, the covered entity's information and the individual's agreement may be given orally.

(a) Standard: Uses and disclosures required by law. (1) A covered entity may use or disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law.

(2) A covered entity must meet the requirements described in paragraph (c), (e), or (f) of this section for uses or disclosures required by law.

(b) Standard: uses and disclosures for public health activities. (1) Permitted disclosures. A covered entity may disclose protected health information for the public health activities and purposes described in this paragraph to:

(i) A public health authority that is authorized by law to collect or receive such information for the purpose of preventing or controlling disease, injury, or disability, including, but not limited to, the reporting of disease, injury, vital events such as birth or death, and the conduct of public health surveillance, public health investigations, and public health interventions; or, at the direction of a public health authority, to an official of a foreign government agency that is acting in collaboration with a public health authority;

(ii) A public health authority or other appropriate government authority authorized by law to receive reports of child abuse or neglect;

(iii) A person subject to the jurisdiction of the Food and Drug Administration (FDA) with respect to an FDA-regulated product or activity for which that person has responsibility, for the purpose of activities related to the quality, safety or effectiveness of such FDA-regulated product or activity. Such purposes include:

(A) To collect or report adverse events (or similar activities with respect to food or dietary supplements), product defects or problems (including problems with the use or labeling of a product), or biological product deviations;

(B) To track FDA-regulated products;

45 CFR 164.512

(C) To enable product recalls, repairs, or replacement, or lookback (including locating and notifying individuals who have received products that have been recalled, withdrawn, or are the subject of lookback); or

(D) To conduct post marketing surveillance;

(iv) A person who may have been exposed to a communicable disease or may otherwise be at risk of contracting or spreading a disease or condition, if the covered entity or public health authority is authorized by law to notify such person as necessary in the conduct of a public health intervention or investigation; or

(v) An employer, about an individual who is a member of the workforce of the employer, if:

(A) The covered entity is a covered health care provider who is a member of the workforce of such employer or who provides health care to the individual at the request of the employer:

(1) To conduct an evaluation relating to medical surveillance of the workplace; or

(2) To evaluate whether the individual has a work-related illness or injury;

(B) The protected health information that is disclosed consists of findings concerning a work-related illness or injury or a workplace-related medical surveillance;

(C) The employer needs such findings in order to comply with its obligations, under 29 CFR parts 1904 through 1928, 30 CFR parts 50 through 90, or under state law having a similar purpose, to record such illness or injury or to carry out responsibilities for workplace medical surveillance; and

(D) The covered health care provider provides written notice to the individual that protected health information relating to the medical surveillance of the workplace and work-related illnesses and injuries is disclosed to the employer:

(1) By giving a copy of the notice to the individual at the time the health care is provided; or

(2) If the health care is provided on the work site of the employer, by posting the notice in a prominent place at the location where the health care is provided.

(2) Permitted uses. If the covered entity also is a public health authority, the covered entity is permitted to use protected health information in all cases in which it is permitted to disclose such information for public health activities under paragraph (b)(1) of this section.

(c) Standard: Disclosures about victims of abuse, neglect or domestic violence. (1) Permitted disclosures. Except for reports of child abuse or neglect permitted by paragraph (b)(1)(ii) of this section, a covered entity may disclose protected health information about an individual whom the covered entity reasonably believes to be a victim of abuse, neglect, or domestic violence to a government authority, including a social service or protective services agency, authorized by law to receive reports of such abuse, neglect, or domestic violence:

(i) To the extent the disclosure is required by law and the disclosure complies with and is limited to the relevant requirements of such law;

(ii) If the individual agrees to the disclosure; or

(iii) To the extent the disclosure is expressly authorized by statute or regulation and:

(A) The covered entity, in the exercise of professional judgment, believes the disclosure is necessary to prevent serious harm to the individual or other potential victims; or

(B) If the individual is unable to agree because of incapacity, a law enforcement or other public official authorized to receive the report represents that the protected health information for which disclosure is sought is not intended to be used against the individual and that an immediate enforcement activity that depends upon the disclosure would be materially and adversely affected by waiting until the individual is able to agree to the disclosure.

(2) Informing the individual. A covered entity that makes a disclosure permitted by paragraph (c)(1) of this section must promptly inform the individual that such a report has been or will be made, except if:

(i) The covered entity, in the exercise of professional judgment, believes informing the individual would place the individual at risk of serious harm; or

45 CFR 164.512

(ii) The covered entity would be informing a personal representative, and the covered entity reasonably believes the personal representative is responsible for the abuse, neglect, or other injury, and that informing such person would not be in the best interests of the individual as determined by the covered entity, in the exercise of professional judgment.

(d) Standard: Uses and disclosures for health oversight activities. (1) Permitted disclosures. A covered entity may disclose protected health information to a health oversight agency for oversight activities authorized by law, including audits; civil, administrative, or criminal investigations; inspections; licensure or disciplinary actions; civil, administrative, or criminal proceedings or actions; or other activities necessary for appropriate oversight of:

(i) The health care system;

(ii) Government benefit programs for which health information is relevant to beneficiary eligibility;

(iii) Entities subject to government regulatory programs for which health information is necessary for determining compliance with program standards; or

(iv) Entities subject to civil rights laws for which health information is necessary for determining compliance.

(2) Exception to health oversight activities. For the purpose of the disclosures permitted by paragraph (d)(1) of this section, a health oversight activity does not include an investigation or other activity in which the individual is the subject of the investigation or activity and such investigation or other activity does not arise out of and is not directly related to:

(i) The receipt of health care;

(ii) A claim for public benefits related to health; or

(iii) Qualification for, or receipt of, public benefits or services when a patient's health is integral to the claim for public benefits or services.

(3) Joint activities or investigations. [Notwithstanding] paragraph (d)(2) of this section, if a health oversight activity or investigation is conducted in conjunction with an oversight activity or investigation relating to a claim for public benefits not related to health, the joint activity or investigation is considered a health oversight activity for purposes of paragraph (d) of this section.

(4) Permitted uses. If a covered entity also is a health oversight agency, the covered entity may use protected health information for health oversight activities as permitted by paragraph (d) of this section.

(e) Standard: Disclosures for judicial and administrative proceedings.

(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

(iii) For the purposes of paragraph (e)(1)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protecting health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);

45 CFR 164.512

(B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and

(C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:

(1) No objections were filed; or

(2) All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution.

(iv) For the purposes of paragraph (e)(1)(ii)(B) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or

(B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal.

(v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:

(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and

(B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

(vi) Notwithstanding paragraph (e)(1)(ii) of this section, a covered entity may disclose protected health information in response to lawful process described in paragraph (e)(1)(ii) of this section without receiving satisfactory assurance under paragraph (e)(1)(ii)(A) or (B) of this section, if the covered entity makes reasonable efforts to provide notice to the individual sufficient to meet the requirements of paragraph (e)(1)(iii) of this section or to seek a qualified protective order sufficient to meet the requirements of paragraph (e)(1)(iv) of this section.

(2) Other uses and disclosures under this section. The provisions of this paragraph do not supersede other provisions of this section that otherwise permit or restrict uses or disclosures of protected health information.

(f) Standard: Disclosures for law enforcement purposes. A covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official if the conditions in paragraphs (f)(1) through (f)(6) of this section are met, as applicable.

(1) Permitted disclosures: Pursuant to process and as otherwise required by law. A covered entity may disclose protected health information:

(i) As required by law including laws that require the reporting of certain types of wounds or other physical injuries, except for laws subject to paragraph (b)(1)(ii) or (c)(1)(i) of this section; or

(ii) In compliance with and as limited by the relevant requirements of:

(A) A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer;

(B) A grand jury subpoena; or

(C) An administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, provided that:

(1) The information sought is relevant and material to a legitimate law enforcement inquiry;

(2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and

(3) De-identified information could not reasonably be used.

45 CFR 164.512

(2) Permitted disclosures: Limited information for identification and location purposes. Except for disclosures required by law as permitted by paragraph (f)(1) of this section, a covered entity may disclose protected health information in response to a law enforcement official's request for such information for the purpose of identifying or locating a suspect, fugitive, material witness, or missing person, provided that:

(i) The covered entity may disclose only the following information:

(A) Name and address;

(B) Date and place of birth;

(C) Social security number;

(D) ABO blood type and rh factor;

(E) Type of injury;

(F) Date and time of treatment;

(G) Date and time of death, if applicable; and

(H) A description of distinguishing physical characteristics, including height, weight, gender, race, hair and eye color, presence or absence of facial hair (beard or moustache), scars, and tattoos.

(ii) Except as permitted by paragraph (f)(2)(i) of this section, the covered entity may not disclose for the purposes of identification or location under paragraph (f)(2) of this section any protected health information related to the individual's DNA or DNA analysis, dental records, or typing, samples or analysis of body fluids or tissue.

(3) Permitted disclosure: Victims of a crime. Except for disclosures required by law as permitted by paragraph (f)(1) of this section, a covered entity may disclose protected health information in response to a law enforcement official's request for such information about an individual who is or is suspected to be a victim of a crime, other than disclosures that are subject to paragraph (b) or (c) of this section, if:

(i) The individual agrees to the disclosure; or

(ii) The covered entity is unable to obtain the individual's agreement because of incapacity or other emergency circumstance, provided that:

(A) The law enforcement official represents that such information is needed to determine whether a violation of law by a person other than the victim has occurred, and such information is not intended to be used against the victim;

(B) The law enforcement official represents that immediate law enforcement activity that depends upon the disclosure would be materially and adversely affected by waiting until the individual is able to agree to the disclosure; and

(C) The disclosure is in the best interests of the individual as determined by the covered entity, in the exercise of professional judgment.

(4) Permitted disclosure: Decedents. A covered entity may disclose protected health information about an individual who has died to a law enforcement official for the purpose of alerting law enforcement of the death of the individual if the covered entity has a suspicion that such death may have resulted from criminal conduct.

(5) Permitted disclosure: Crime on premises. A covered entity may disclose to a law enforcement official protected health information that the covered entity believes in good faith constitutes evidence of criminal conduct that occurred on the premises of the covered entity.

(6) Permitted disclosure: Reporting crime in emergencies. (i) A covered health care provider providing emergency health care in response to a medical emergency, other than such emergency on the premises of the covered health care provider, may disclose protected health information to a law enforcement official if such disclosure appears necessary to alert law enforcement to:

(A) The commission and nature of a crime;

(B) The location of such crime or of the victim(s) of such crime; and

(C) The identity, description, and location of the perpetrator of such crime.

45 CFR 164.512

(ii) If a covered health care provider believes that the medical emergency described in paragraph (f)(6)(i) of this section is the result of abuse, neglect, or domestic violence of the individual in need of emergency health care, paragraph (f)(6)(i) of this section does not apply and any disclosure to a law enforcement official for law enforcement purposes is subject to paragraph (c) of this section.

(g) Standard: Uses and disclosures about decedents. (1) Coroners and medical examiners. A covered entity may disclose protected health information to a coroner or medical examiner for the purpose of identifying a deceased person, determining a cause of death, or other duties as authorized by law. A covered entity that also performs the duties of a coroner or medical examiner may use protected health information for the purposes described in this paragraph.

(2) Funeral directors. A covered entity may disclose protected health information to funeral directors, consistent with applicable law, as necessary to carry out their duties with respect to the decedent. If necessary for funeral directors to carry out their duties, the covered entity may disclose the protected health information prior to, and in reasonable anticipation of, the individual's death.

(h) Standard: Uses and disclosures for cadaveric organ, eye or tissue donation purposes. A covered entity may use or disclose protected health information to organ procurement organizations or other entities engaged in the procurement, banking, or transplantation of cadaveric organs, eyes, or tissue for the purpose of facilitating organ, eye or tissue donation and transplantation.

(i) Standard: Uses and disclosures for research purposes. (1) Permitted uses and disclosures. A covered entity may use or disclose protected health information for research, regardless of the source of funding of the research, provided that:

(i) Board approval of a waiver of authorization. The covered entity obtains documentation that an alteration to or waiver, in whole or in part, of the individual authorization required by § 164.508 for use or disclosure of protected health information has been approved by either:

(A) An Institutional Review Board (IRB), established in accordance with 7 CFR lc.107, *10 CFR 745.107, 14 CFR 1230.107, 15 CFR 27.107, 16 CFR 1028.107, 21 CFR 56.107, 22 CFR 225.107,* 24 CFR 60.107, *28 CFR 46.107, 32 CFR 219.107, 34 CFR 97.107, 38 CFR 16.107, 40 CFR 26.107, 45 CFR 46.107, 45 CFR 690.107,* or *49 CFR 11.107;* or

(B) A privacy board that:

(1) Has members with varying backgrounds and appropriate professional competency as necessary to review the effect of the research protocol on the individual's privacy rights and related interests;

(2) Includes at least one member who is not affiliated with the covered entity, not affiliated with any entity conducting or sponsoring the research, and not related to any person who is affiliated with any of such entities; and

(3) Does not have any member participating in a review of any project in which the member has a conflict of interest.

(ii) Reviews preparatory to research. The covered entity obtains from the researcher representations that:

(A) Use or disclosure is sought solely to review protected health information as necessary to prepare a research protocol or for similar purposes preparatory to research;

(B) No protected health information is to be removed from the covered entity by the researcher in the course of the review; and

(C) The protected health information for which use or access is sought is necessary for the research purposes.

(iii) Research on decedent's information. The covered entity obtains from the researcher:

(A) Representation that the use or disclosure sought is solely for research on the protected health information of decedents;

(B) Documentation, at the request of the covered entity, of the death of such individuals; and

(C) Representation that the protected health information for which use or disclosure is sought is necessary for the research purposes.

45 CFR 164.512

(2) Documentation of waiver approval. For a use or disclosure to be permitted based on documentation of approval of an alteration or waiver, under paragraph (i)(1)(i) of this section, the documentation must include all of the following:

(i) Identification and date of action. A statement identifying the IRB or privacy board and the date on which the alteration or waiver of authorization was approved;

(ii) Waiver criteria. A statement that the IRB or privacy board has determined that the alteration or waiver, in whole or in part, of authorization satisfies the following criteria:

(A) The use or disclosure of protected health information involves no more than a minimal risk to the privacy of individuals, based on, at least, the presence of the following elements;

(1) An adequate plan to protect the identifiers from improper use and disclosure;

(2) An adequate plan to destroy the identifiers at the earliest opportunity consistent with conduct of the research, unless there is a health or research justification for retaining the identifiers or such retention is otherwise required by law; and

(3) Adequate written assurances that the protected health information will not be reused or disclosed to any other person or entity, except as required by law, for authorized oversight of the research study, or for other research for which the use or disclosure of protected health information would be permitted by this subpart;

(B) The research could not practicably be conducted without the waiver or alteration; and

(C) The research could not practicably be conducted without access to and use of the protected health information.

(iii) Protected health information needed. A brief description of the protected health information for which use or access has been determined to be necessary by the IRB or privacy board has determined, pursuant to paragraph (i)(2)(ii)(C) of this section;

(iv) Review and approval procedures. A statement that the alteration or waiver of authorization has been reviewed and approved under either normal or expedited review procedures, as follows:

(A) An IRB must follow the requirements of the Common Rule, including the normal review procedures (7 CFR 1c.108(b), 10 CFR 745.108(b), 14 CFR 1230.108(b), 15 CFR 27.108(b), 16 CFR 1028.108(b), 21 CFR 56.108(b), 22 CFR 225.108(b), 24 CFR 60.108(b), 28 CFR 46.108(b), 32 CFR 219.108(b), 34 CFR 97.108(b), 38 CFR 16.108(b), 40 CFR 26.108(b), 45 CFR 46.108(b), 45 CFR 690.108(b), or 49 CFR 11.108(b)) or the expedited review procedures (7 CFR 1c.110, 10 CFR 745.110, 14 CFR 1230.110, 15 CFR 27.110, 16 CFR 1028.110, 21 CFR 56.110, 22 CFR 225.110, 24 CFR 60.110, 28 CFR 46.110, 32 CFR 219.110, 34 CFR 97.110, 38 CFR 16.110, 40 CFR 26.110, 45 CFR 46.110, 45 CFR 690.110, or 49 CFR 11.110);

(B) A privacy board must review the proposed research at convened meetings at which a majority of the privacy board members are present, including at least one member who satisfies the criterion stated in paragraph (i)(1)(i)(B)(2) of this section, and the alteration or waiver of authorization must be approved by the majority of the privacy board members present at the meeting, unless the privacy board elects to use an expedited review procedure in accordance with paragraph (i)(2)(iv)(C) of this section;

(C) A privacy board may use an expedited review procedure if the research involves no more than minimal risk to the privacy of the individuals who are the subject of the protected health information for which use or disclosure is being sought. If the privacy board elects to use an expedited review procedure, the review and approval of the alteration or waiver of authorization may be carried out by the chair of the privacy board, or by one or more members of the privacy board as designated by the chair; and

(v) Required signature. The documentation of the alteration or waiver of authorization must be signed by the chair or other member, as designated by the chair, of the IRB or the privacy board, as applicable.

(j) Standard: Uses and disclosures to avert a serious threat to health or safety. (1) Permitted disclosures. A covered entity may, consistent with applicable law and standards of ethical conduct, use or disclose protected health information, if the covered entity, in good faith, believes the use or disclosure:

(i)(A) Is necessary to prevent or lessen a serious and imminent threat to the health or safety of a person or the public; and

45 CFR 164.512

(B) Is to a person or persons reasonably able to prevent or lessen the threat, including the target of the threat; or

(ii) Is necessary for law enforcement authorities to identify or apprehend an individual:

(A) Because of a statement by an individual admitting participation in a violent crime that the covered entity reasonably believes may have caused serious physical harm to the victim; or

(B) Where it appears from all the circumstances that the individual has escaped from a correctional institution or from lawful custody, as those terms are defined in § 164.501.

(2) Use or disclosure not permitted. A use or disclosure pursuant to paragraph (j)(1)(ii)(A) of this section may not be made if the information described in paragraph (j)(1)(ii)(A) of this section is learned by the covered entity:

(i) In the course of treatment to affect the propensity to commit the criminal conduct that is the basis for the disclosure under paragraph (j)(1)(ii)(A) of this section, or counseling or therapy; or

(ii) Through a request by the individual to initiate or to be referred for the treatment, counseling, or therapy described in paragraph (j)(2)(i) of this section.

(3) Limit on information that may be disclosed. A disclosure made pursuant to paragraph (j)(1)(ii)(A) of this section shall contain only the statement described in paragraph (j)(1)(ii)(A) of this section and the protected health information described in paragraph (f)(2)(i) of this section.

(4) Presumption of good faith belief. A covered entity that uses or discloses protected health information pursuant to paragraph (j)(1) of this section is presumed to have acted in good faith with regard to a belief described in paragraph (j)(1)(i) or (ii) of this section, if the belief is based upon the covered entity's actual knowledge or in reliance on a credible representation by a person with apparent knowledge or authority.

(k) Standard: Uses and disclosures for specialized government functions. (1) Military and veterans activities. (i) Armed Forces personnel. A covered entity may use and disclose the protected health information of individuals who are Armed Forces personnel for activities deemed necessary by appropriate military command authorities to assure the proper execution of the military mission, if the appropriate military authority has published by notice in the Federal Register the following information:

(A) Appropriate military command authorities; and

(B) The purposes for which the protected health information may be used or disclosed.

(ii) Separation or discharge from military service. A covered entity that is a component of the Departments of Defense or Transportation may disclose to the Department of Veterans Affairs (DVA) the protected health information of an individual who is a member of the Armed Forces upon the separation or discharge of the individual from military service for the purpose of a determination by DVA of the individual's eligibility for or entitlement to benefits under laws administered by the Secretary of Veterans Affairs.

(iii) Veterans. A covered entity that is a component of the Department of Veterans Affairs may use and disclose protected health information to components of the Department that determine eligibility for or entitlement to, or that provide, benefits under the laws administered by the Secretary of Veterans Affairs.

(iv) Foreign military personnel. A covered entity may use and disclose the protected health information of individuals who are foreign military personnel to their appropriate foreign military authority for the same purposes for which uses and disclosures are permitted for Armed Forces personnel under the notice published in the Federal Register pursuant to paragraph (k)(1)(i) of this section.

(2) National security and intelligence activities. A covered entity may disclose protected health information to authorized federal officials for the conduct of lawful intelligence, counter-intelligence, and other national security activities authorized by the National Security Act (50 U.S.C. 401, et seq.) and implementing authority (e.g., Executive Order 12333).

(3) Protective services for the President and others. A covered entity may disclose protected health information to authorized federal officials for the provision of protective services to the President or other persons authorized by 18 U.S.C. 3056, or to foreign heads of state or other persons authorized by 22 U.S.C. 2709(a)(3), or to for the conduct of investigations authorized by 18 U.S.C. 871 and 879.

45 CFR 164.512

(4) Medical suitability determinations. A covered entity that is a component of the Department of State may use protected health information to make medical suitability determinations and may disclose whether or not the individual was determined to be medically suitable to the officials in the Department of State who need access to such information for the following purposes:

(i) For the purpose of a required security clearance conducted pursuant to Executive Orders 10450 and 12698;

(ii) As necessary to determine worldwide availability or availability for mandatory service abroad under sections 101(a)(4) and 504 of the Foreign Service Act; or

(iii) For a family to accompany a Foreign Service member abroad, consistent with section 101(b)(5) and 904 of the Foreign Service Act.

(5) Correctional institutions and other law enforcement custodial situations. (i) Permitted disclosures. A covered entity may disclose to a correctional institution or a law enforcement official having lawful custody of an inmate or other individual protected health information about such inmate or individual, if the correctional institution or such law enforcement official represents that such protected health information is necessary for:

(A) The provision of health care to such individuals;

(B) The health and safety of such individual or other inmates;

(C) The health and safety of the officers or employees of or others at the correctional institution;

(D) The health and safety of such individuals and officers or other persons responsible for the transporting of inmates or their transfer from one institution, facility, or setting to another;

(E) Law enforcement on the premises of the correctional institution; and

(F) The administration and maintenance of the safety, security, and good order of the correctional institution.

(ii) Permitted uses. A covered entity that is a correctional institution may use protected health information of individuals who are inmates for any purpose for which such protected health information may be disclosed.

(iii) No application after release. For the purposes of this provision, an individual is no longer an inmate when released on parole, probation, supervised release, or otherwise is no longer in lawful custody.

(6) Covered entities that are government programs providing public benefits. (i) A health plan that is a government program providing public benefits may disclose protected health information relating to eligibility for or enrollment in the health plan to another agency administering a government program providing public benefits if the sharing of eligibility or enrollment information among such government agencies or the maintenance of such information in a single or combined data system accessible to all such government agencies is required or expressly authorized by statute or regulation.

(ii) A covered entity that is a government agency administering a government program providing public benefits may disclose protected health information relating to the program to another covered entity that is a government agency administering a government program providing public benefits if the programs serve the same or similar populations and the disclosure of protected health information is necessary to coordinate the covered functions of such programs or to improve administration and management relating to the covered functions of such programs.

(l) Standard: Disclosures for workers' compensation. A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault.

HISTORY: [65 FR 82462, 82813, Dec. 28, 2000; 66 FR 12434, Feb. 26, 2001; 67 FR 53182, 53270, Aug. 14, 2002]

AUTHORITY: AUTHORITY NOTE APPLICABLE TO ENTIRE PART :
42 U.S.C. 1320d-1320d-8 and sec. 264, Pub. L. No. 104-191, 110 Stat. 2033-2034 (42 U.S.C. 1320d-2 (note)).

NOTES: [EFFECTIVE DATE NOTE: 67 FR 53182, 53270, Aug. 14, 2002, amended this section, effective Oct. 15, 2002.]

45 CFR 164.512

NOTES APPLICABLE TO ENTIRE SUBTITLE:
[PUBLISHER'S NOTE: Nomenclature changes to Subtitle A appear at *66 FR 39450, 39452*, July 31, 2001.]

NOTES TO DECISIONS: COURT AND ADMINISTRATIVE DECISIONS SIGNIFICANTLY DISCUSSING
SECTION --
*Northwestern Mem'l Hosp. v Ashcroft (2004, CA7 Ill) 362 F3d 923, 64 Fed Rules Evid Serv 334, 58 FR Serv 3d 173*
*Bayne v Provost (2005, ND NY) 359 F Supp 2d 234,* summary judgment gr, dismd *(2005, ND NY) 2005 US Dist LEXIS 40889*
*Croskey v BMW of N. Am., Inc. (2005, ED Mich) 2005 US Dist LEXIS 3673,* motion gr, request den *(2005, ED Mich) 2005 US Dist LEXIS 3397* and affd in part and revd in part, objection granted, in part, objection overruled, in part *(2005, ED Mich) 2005 US Dist LEXIS 43442*
*McCloud v Bd. of Dirs. (2006, DC Kan) 2006 US Dist LEXIS 58087*
*Ohio Legal Rights Serv. v Buckeye Ranch, Inc. (2005, SD Ohio) 365 F Supp 2d 877*
*Prot. & Advocacy Sys. v Freudenthal (2006, DC Wyo) 412 F Supp 2d 1211*
*Rosales v City of Bakersfield (2006, ED Cal) 2006 US Dist LEXIS 22382*
*United States ex rel. Kaplan v Metro. Ambulance & First-Aid Corp. (2005, ED NY) 395 F Supp 2d 1*
*United States v Chase (2005, DC Vt) 2005 US Dist LEXIS 38676*
*Abbott v Tex. Dep't of Mental Health & Mental Retardation (2006, Tex App Austin) 2006 Tex App LEXIS 7655*
*Abbott v Tex. Dep't of Mental Health & Mental Retardation (2006, Tex App Austin) 34 Media L R 2230,* op withdrawn, substituted op *(2006, Tex App Austin) 2006 Tex App LEXIS 7655*
*AG v Morin (In re AG) (2007, Mich App) 2007 Mich App LEXIS 475*
*Hawes v Golden (2004, Ohio App, Lorain Co) 2004 Ohio 4957,* discretionary appeal not allowed *(2005) 105 Ohio St 3d 1439, 2005 Ohio 531, 822 NE2d 811*
*Matter of Derek (2006, Sur) 12 Misc 3d 1132, 821 NYS2d 387*
*Solomon v State Bd. of Physician Quality Assur. (2003) 155 Md App 687, 845 A2d 47*
*Tomczak v Ingalls Mem. Hosp. (2005, 1st Dist) 359 Ill App 3d 448, 295 Ill Dec 968, 834 NE2d 549*
*Y. J. K. v D.A. (2005) 2005 DC Super LEXIS 11*
*In re AG for Investigative Subpoenas (2007, Mich App) 2007 Mich App LEXIS 759,* motion gr, app den, stay den *(2007) 478 Mich 854, 731 NW2d 91*

6354 words

# AUTHORIZATION TO RELEASE INFORMATION

TO:   Custodian of Records
      Riverside Primary Care of District Heights
      A division of Riverside Primary Care, LLC
      6400 Marlboro Pike
      District Heights, MD 20747

I, RENITA WALSTON JACKSON, of 3160 Guildcrest Court, Waldorf, MD 20602,

hereby authorize the law firm of Ford & Harrison LLP, 1300 19th Street, Suite 700, NW,

Washington, D.C. 20036, to obtain a copy of the following:

1. Any and all documents reflecting any communications between Riverside Primary Care of District Heights and Renita Walston Jackson and/or any agents, family members, or other health care providers for or on behalf of Renita Walston Jackson; and

2. Any and all medical and therapeutic records or information of any nature — whether for inpatient or outpatient treatment — including, but not limited to, emergency room notes, x-ray files and reports, lab slips, doctors' orders, doctors' progress notes, nurses' notes, medication records, flowsheets and charts, consultation and diagnostic reports, correspondence, billing information, all records of any therapeutic or diagnostic evaluation, surgical referrals or recommendations, physical therapy records, social work notes, prescriptions, informed consent forms, handwritten and typed office notes and any other information and/or documents that you have in your custody, control or possession concerning regarding and/or relating to Renita Walston Jackson from January 1, 2002 to the present.

I further authorize Riverside Primary Care of District Heights, its agents, assigns,

affiliates, directors, and/or attorneys possessing the above information to release to Alison N.

Davis at Ford & Harrison LLP the documentation and information requested herein, and to

discuss such documentation or any information related to the above-documentation with the

person or persons to whom it is released, as set forth above.

Should there be any question as to this Authorization, you may contact me as indicated below.

_____          DATE: _____

RENITA WALSTON JACKSON
SSN: ████
DOB: ████
c/o L. Saundra White, Esquire
WHITE BAY & HENDERSON, LLC
1401 Mercantile Lane, Suite 200C
Largo, MD 20774
Telephone: 240-455-6158

DC:71713.1

# AUTHORIZATION TO RELEASE INFORMATION

TO:    Custodian of Records
       Prince Georges Hospital Center
       3001 Hospital Drive
       Cheverly, MD 20785

I, RENITA WALSTON JACKSON, of 3160 Guildcrest Court, Waldorf, MD 20602,

hereby authorize the law firm of Ford & Harrison LLP, 1300 19th Street, Suite 700, NW,

Washington, D.C. 20036, to obtain a copy of the following:

1.    Any and all documents reflecting any communications between Prince Georges
      Hospital Center and Renita Walston Jackson and/or any agents, family members,
      or other health care providers for or on behalf of Renita Walston Jackson; and

2.    Any and all medical and therapeutic records or information of any nature —
      whether for inpatient or outpatient treatment — including, but not limited to,
      emergency room notes, x-ray files and reports, lab slips, doctors' orders, doctors'
      progress notes, nurses' notes, medication records, flowsheets and charts,
      consultation and diagnostic reports, correspondence, billing information, all
      records of any therapeutic or diagnostic evaluation, surgical referrals or
      recommendations, physical therapy records, social work notes, prescriptions,
      informed consent forms, handwritten and typed office notes and any other
      information and/or documents that you have in your custody, control or
      possession concerning regarding and/or relating to Renita Walston Jackson from
      January 1, 2002 to the present.

I further authorize Prince Georges Hospital Center, its agents, assigns, affiliates,

directors, and/or attorneys possessing the above information to release to Alison N. Davis at Ford

& Harrison LLP the documentation and information requested herein, and to discuss such

documentation or any information related to the above-documentation with the person or persons

to whom it is released, as set forth above.

Should there be any question as to this Authorization, you may contact me as indicated below.

DATE: _____

_____

RENITA WALSTON JACKSON
SSN: ████████
DOB ████████
c/o L. Saundra White, Esquire
WHITE BAY & HENDERSON, LLC
1401 Mercantile Lane, Suite 200C
Largo, MD 20774
Telephone: 240-455-6158

DC:71719.1

## AUTHORIZATION TO RELEASE INFORMATION

TO:    Custodian of Records
       The Metropolitan Washington Orthopedic Association
       6144 Oxon Hill Rd.
       Oxon Hill, MD  20745

I, RENITA WALSTON JACKSON, of 3160 Guildcrest Court, Waldorf, MD 20602,

hereby authorize the law firm of Ford & Harrison LLP, 1300 19th Street, Suite 700, NW,

Washington, D.C. 20036, to obtain a copy of the following:

1.    Any and all documents reflecting any communications between the Metropolitan
      Washington Orthopedic Association and Renita Walston Jackson and/or any
      agents, family members, or other health care providers for or on behalf of Renita
      Walston Jackson; and

2.    Any and all medical and therapeutic records or information of any nature —
      whether for inpatient or outpatient treatment — including, but not limited to,
      emergency room notes, x-ray files and reports, lab slips, doctors' orders, doctors'
      progress notes, nurses' notes, medication records, flowsheets and charts,
      consultation and diagnostic reports, correspondence, billing information, all
      records of any therapeutic or diagnostic evaluation, surgical referrals or
      recommendations, physical therapy records, social work notes, prescriptions,
      informed consent forms, handwritten and typed office notes and any other
      information and/or documents that you have in your custody, control or
      possession concerning regarding and/or relating to Renita Walston Jackson from
      January 1, 2002 to the present.

I further authorize the Metropolitan Washington Orthopedic Association, its agents,

assigns, affiliates, directors, and/or attorneys possessing the above information to release to

Alison N. Davis at Ford & Harrison LLP the documentation and information requested herein,

and to discuss such documentation or any information related to the above-documentation with

the person or persons to whom it is released, as set forth above.

Should there be any question as to this Authorization, you may contact me as indicated below.

_____    DATE: _____

RENITA WALSTON JACKSON
SSN: ███████████
DOB ███████
c/o L. Saundra White, Esquire
WHITE BAY & HENDERSON, LLC
1401 Mercantile Lane, Suite 200C
Largo, MD  20774
Telephone: 240-455-6158

DC:71722.1

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA S. WALSTON JACKSON,

    Plaintiff,

  v.

CCA OF TENNESSEE, INC.,

    Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

## NOTICE OF DEPOSITION

    PLEASE TAKE NOTICE that, on March 3, 2008, beginning at **9:00 a.m.**, Defendant CCA of Tennessee, Inc., by and through its counsel, will take the deposition of Plaintiff Renita Walston Jackson, upon oral examination and pursuant to Rule 30 of the Federal Rules of Civil Procedure, at the offices of Ford & Harrison LLP, 1300 19th Street, Suite 700, Washington, DC 20036. This deposition will be recorded by stenographic and sound-and-visual (videotape) means and will continue day to day until completed.

Dated: February 19, 2008

Respectfully submitted,

By: _____
Alison Nadine Davis, D.C. Bar No. 429700
Dannie B. Fogleman, D.C. Bar No. 414311
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 700
Washington, DC  20036
(202) 719-2000
(202) 719-2077 (facsimile)
adavis@fordharrison.com
dfogleman@fordharrison.com

Attorneys for Defendant CCA of Tennessee, Inc.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that she caused a copy of the foregoing

Notice of Deposition to be served upon the following counsel of record via U.S. Mail, postage

prepaid, on February 19, 2008:

> L. Saundra White
> 3549 Crain Highway, # 107
> Bowie, MD  20716

Alison N. Davis

DC:72374.1

# EXHIBIT F

**Sharnell Young**

| | |
|---|---|
| **From:** | Alison Davis [ADavis @fordharrison.com] |
| **Sent:** | Monday, March 10, 2008 4:55 PM |
| **To:** | Sharnell Young |
| **Subject:** | FW: Intent to File a Motion for A Protective Order |

**From:** WhiteLegalGrp@aol.com [mailto:WhiteLegalGrp@aol.com]
**Sent:** Sunday, March 02, 2008 11:59 PM
**To:** Alison Davis
**Cc:** WhiteLegalGrp@aol.com
**Subject:** Intent to File a Motion for A Protective Order

Good Evening Ms. Davis:

I would like your consent for my proposed Motion for Protective Order for all the medical records and employment records that you obtained from various Healthcare Providers and Kelly Services without Mrs. Jackson's authorization. Thus, your consent to this Motion for a Protective Order means that you will not make any inquiries during Mrs. Jackson's deposition (on tomorrow) regarding the documents your obtained via your January 22, 2008 subpoena.

-L. Saundra White
Attorney At Law

Delicious ideas to please the pickiest eaters. Watch the video on AOL Living.

# EXHIBIT G

# Sharnell Young

| | |
|---|---|
| **From:** | Alison Davis |
| **Sent:** | Wednesday, February 06, 2008 7:22 PM |
| **To:** | WhiteLegalGrp@aol.com |
| **Cc:** | Sharnell Young |
| **Subject:** | Renita Walston Jackson |
| **Attachments:** | Alison Davis.vcf; DC-72066-v1-CCA Walston Jackson Protective Order.DOC |

In anticipation of our production of documents in response to your document request, we are proposing the attached protective order.  We are requesting the protective order because certain of your requests require the production of information relating to nonparties.   Please let me know if you will stipulate to the protective order.

Alison N. Davis
Partner
Ford & Harrison LLP
1300 19th St., NW
Suite 700
Washington, D.C.  20036
Direct Dial:  202-719-2017
Cell Phone:  240-994-4917
Fax: 202-719-2077
adavis@fordharrison.com
www.fordharrison.com

The information contained in this message from Ford & Harrison LLP and any attachments are confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments.

Under U.S. Treasury regulations, we are required to inform you that any advice contained in this e-mail or any attachment hereto is not intended to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code.

For additional information, please visit our web site at www.fordharrison.com <http://www.fordharrison.com/>.

Atlanta, Asheville, Birmingham, Chicago, Dallas, Denver, Jacksonville, Los Angeles, Melbourne, Memphis, Miami, Minneapolis, New York, Orlando, Phoenix, Spartanburg, Tampa, Washington, DC



Download VCard  My Bio  Location

FORD & HARRISON LLP
www.fordharrison.com

**Alison N. Davis**
1300 19th Street, NW, Suite 700
Washington, DC  20036

Phone: 202-719-2017
Fax: 202-719-2077
adavis@fordharrison.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RENITA WALSTON JACKSON,

        Plaintiff,

    v.

CCA OF TENNESSEE, INC.,

        Defendant.

CIVIL ACTION NO. 1:06-cv-616-RCL

## STIPULATED PROTECTIVE ORDER

With respect to any documents produced or received by Plaintiff Renita Walston Jackson ("Plaintiff") and Defendant CCA of Tennessee, Inc., ("Defendant" or "CCA") pursuant to written request, interrogatory, stipulation, subpoena, motion or deposition, or any other information obtained by Plaintiff or Defendant in this case that may be designated by Plaintiff or Defendant as being confidential as defined below (hereinafter referred to as "Confidential Material"), IT IS HEREBY STIPULATED AND AGREED BY AND BETWEEN THE UNDERSIGNED ATTORNEYS FOR THE RESPECTIVE PARTIES TO THIS ACTION THAT:

    1.    (a)    Plaintiff, CCA, and their attorneys shall utilize confidential material solely in accordance with the provisions of this Order, and other than as provided herein, confidential material, including all excerpts therefrom or copies or summaries thereof, may not be disclosed to any other person.

        (b)    For purposes of this Stipulated Protective Order, "Confidential Material" means: (i) documents and/or information protected by the attorney-client privilege;

(ii) documents and/or information protected by the work product doctrine; (iii) trade secrets and/or other proprietary information of the parties, and/or any of their employees, agents, representatives, members, predecessors, successors, or affiliated entities; (iv) financial information of or pertaining to the parties, and/or any of their employees, agents, representatives, members, predecessors, successors, or affiliated entities; and/or (v) personnel and/or payroll records of the parties, and/or any of their employees, agents, representatives, members, predecessors, successors, or affiliated entities.

      (c)    The parties shall designate documents or other materials as confidential through the notation of the word "Confidential" on the face of every page containing confidential information.

      2.    Confidential Material shall be used by persons to whom it is disclosed pursuant to this Order solely for the purpose of this litigation, and not for any other purpose.  The provisions of this Order shall not restrict the disclosure of Confidential Material by Plaintiff, Defendant, or their counsel of record for the purposes detailed in this Order.

      3.    Plaintiff, Defendant, or their attorneys may disclose Confidential Material only to paralegal, clerical support and secretarial staff employed by their attorneys; to witnesses or potential witnesses in the current litigation; to any person who is expressly retained by Plaintiff, Defendant, or their attorneys in this action to render assistance in the preparation of the case (e.g., experts); court officials; or as otherwise may be necessary for litigation purposes.

      4.    Prior to the release or disclosure of Confidential Material to any of the individuals covered by Paragraph 3, counsel shall ensure that the individual has been apprised of the confidential nature of the material produced and of the existence of this Protective Order and

understands that the Court has the power to enforce the Protective Order. Prior to the release or disclosure of Confidential Material, all individuals covered by Paragraph 3 (except paralegal, clerical and secretarial staff of counsel and court officials) shall sign a copy of the written acknowledgment attached as Exhibit 1. Counsel for the parties shall maintain a file of all original acknowledgments signed by persons to whom Confidential Material is disclosed.

5.    Each person to whom any Confidential Material is disclosed shall:

    a)    maintain the material in a safe and secure location;

    b)    not reveal the contents of the material to any person other than the parties permitted to have access pursuant to this Protective Order; and

    c)    use the material only for the purpose of discovering potentially relevant evidence, testifying, presenting evidence and/or assisting counsel in this action.

Despite the foregoing provisions of this Paragraph 5, witnesses, other than expert witnesses retained by the parties to render assistance in the preparation of the case, shall not be permitted to retain copies of Confidential Material disclosed to them.

6.    Parties may, within fourteen (14) days after receiving a deposition transcript, designate pages of the transcript (and exhibits thereto) as confidential. Confidential Material within the deposition transcript may be designated by underscoring the portions of the pages that are confidential and marking such pages with the following legend: "Confidential—Subject to Protection Pursuant to Court Order." Until expiration of the 14-day period, in the absence of an agreement on the record or in writing to the contrary, all deposition testimony shall be deemed protected material until the expiration of the aforementioned fourteen (14) days.

7.     With respect to any document or information contained therein designated by a party to be confidential and covered by this Protective Order, the other party may object in writing to the designation within twenty-one (21) days of receiving notice of the designation. The party claiming confidentiality must file a motion with the Court, within ten (10) days after receiving notice of the objection(s), to establish the confidential nature of the information, and the party asserting confidentiality shall retain the burden of proving that the information is entitled to protection as confidential under this Protective Order and under the applicable rules. Any designations objected to and not subject to a motion as described in this paragraph shall become null and void.  The material shall continue to be treated as confidential and subject to this Protective Order until the Court renders a decision on the motion and to the extent that the Court's ruling does not remove such protection.

8.     Nothing contained in this order shall limit the right of the parties to use Confidential Material at deposition or in connection with motions filed in Court, except that all parties agree to redact the following identifying information from all motions filed in Court: social security numbers, home addresses and home phone numbers, names of minor children, dates of birth, financial account numbers, and driver's license numbers.  If there is additional identifying or otherwise sensitive information the parties believe should be redacted, the party desiring the redaction will notify the other side and request an agreement to redact the information.  If the other party does not agree that the information should be redacted, the party proposing redaction will have ten (10) days from receiving notice of the disagreement to move for an order declaring that the information should be redacted.  While any motion is pending before the Court, the contested information will not be disclosed in any manner, including in a

4

motion filed in Court.  Any such proposed redactions must be made in writing no later than 30 days prior to the deadline for filing dispositive motions.

      9.     Nothing in this agreement restricts the use of Confidential Material in the trial of this case.  This Protective Order is without prejudice to either party making a motion *in limine* to exclude certain evidence if there are reasonable grounds to do so.

      10.    Within 60 days of the termination of this action, including all appeals, whether by decision, settlement, lapse of time or otherwise, Plaintiff, Defendant, and their attorneys of record will return to respective opposing counsel all copies of all documents containing any Confidential Material or other documents containing confidential material or certify that all copies of Confidential Material have been destroyed.

      11.    Nothing in this Protective Order shall be construed to preclude the parties from: (a) seeking additional protection for confidential information; (b) seeking a modification of this Protective Order; or (c) objecting to discovery that it believes to be otherwise improper.  Nor shall anything in this Agreement be construed as a waiver of any applicable privilege or protections afforded by the work-product doctrine.

      12.    The attorneys of record are responsible for employing reasonable measures, consistent with this Protective Order, to control access to and disclosure of Confidential Material.  The attorneys of record are also responsible for attempting, in good faith, to resolve any disputes arising under this Protective Order before involving the Court.

13.    In view of the nature of the Confidential Material, any unauthorized disclosure or attempted disclosure of confidential information or other violation, or threatened violation, of this Protective Order by the parties and/or their respective counsel may entitle the other party to an injunction prohibiting any such disclosure, attempted disclosure, violation, and/or threatened violation of this Protective Order.

COUNSEL FOR PLAINTIFF                    COUNSEL FOR DEFENDANT

_____                 _____
L. Saundra White                         Dannie B.Fogleman
D.C.  Bar No.                            D.C. Bar No. 414311
3549 Crain Highway, # 107                Alison N. Davis
Bowie, MD  20716                         D.C. Bar No. 429700


                                         FORD & HARRISON, LLP
                                         1300 19th Street, NW, Suite 700
                                         Washington, DC  20036
                                         (202) 719-2000
                                         (202) 719-2077 (fax)
                                         dfogleman@fordharrison.com
                                         adavis@fordharrison.com


**SO ORDERED:**


                                         _____
                                         Royce Lamberth, Judge
                                         U.S. District Court for the District of Columbia

Date: _____, 2008

6

## CONFIDENTIALITY AGREEMENT

The undersigned, whose assistance or testimony is required in the preparation or trial of this Action, has read the annexed Stipulated Protective Order ("Protective Order"), understands its contents, agrees to be bound by the terms thereof, and hereby undertakes to make no disclosures of Confidential Material disclosed to him or her to any person not permitted to have access to Confidential Material by said Protective Order.  Furthermore, the undersigned agrees and submits to the exercise of personal jurisdiction by the U.S. District Court for the District of Columbia insofar as is necessary to enforce the Protective Order.


_____

Name (Print or type)


_____

Signature


_____

Date


DC:72066.1