IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RENITA WALSTON JACKSON,<br><br>    Plaintiff,<br><br>v.<br><br>CCA OF TENNESSEE, INC.,<br><br>    Defendant. | CIVIL ACTION NO. 1:06-cv-616-RCL |

**DEFENDANT CCA OF TENNESSEE, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER COMPELLING DISCLOSURE**

Defendant CCA of Tennessee, Inc. ("CCA") replies in support of its motion for an order compelling disclosure as follows:

**A.    CCA'S MOTION TO COMPEL DISCLOSURE IS NOT A MOTION TO EXTEND DISCOVERY**

At the outset, CCA would like to address an apparent misperception on the part of Plaintiff Renita Walston Jackson regarding the purpose of this motion. Contrary to Plaintiff's assertions, CCA has not attempted to end run the scheduling order in this case by filing this motion. CCA is not seeking to reopen or extend discovery. CCA also is not seeking to exceed the seven (7) hours of deposition time for which the Federal Rules of Civil Procedure provide. Rather, CCA simply seeks to complete Plaintiff's deposition within the allotted 7 hours and to exercise its right to gather information which may have bearing on the merits of this case.

Rule 30(d) provides:

> [u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

FED. R. CIV. P. 30(d). CCA timely served notice of Plaintiff's November 29, 2007 deposition on November 14, 2007 so it would occur prior to the November 30, 2007 discovery deadline set forth in this Court's original June 5, 2007 Scheduling Order, *see* Dkt. Nos. 17 and 24-4 at ¶ 3.[1] Nevertheless, in the spirit of cooperation, CCA consented to a postponement of Plaintiff's deposition and an enlargement of time for the completion of discovery. *Id.* at 3. Thereafter, even though the parties had mutually agreed to the date of Plaintiff's deposition, she had not arranged her schedule to allow for a 7-hour deposition. Again, CCA obliged Plaintiff's needs and agreed to suspend her deposition and recommence her deposition on another mutually agreeable date. *Id.* at 4. Now, in light of the past difficulties relating to the scheduling of Plaintiff's deposition, in an abundance of caution, CCA has requested an extension to June 11, 2008 simply to accommodate possible scheduling conflicts and allow the parties sufficient time to file dispositive motions. CCA seeks to avoid the necessity of requesting this Court's intervention a second time due to Plaintiff's unavailability. CCA's request for relief is not a subterfuge for an extension of discovery.

### B. THIS COURT SHOULD NOT REWARD PLAINTIFF FOR HER OBSTREPEROUS TACTICS

Plaintiff's response to CCA's motion epitomizes the old saying, "no good deed goes unpunished." It is Plaintiff's dilatoriness and recalcitrance which forced CCA to seek relief from this Court pursuant to Rule 37 of the Federal Rules of Civil Procedure. Rather than being considerate of Plaintiff's personal situation, CCA could have requested that this Court compel Plaintiff to appear for her deposition. Instead, when counsel for Plaintiff belatedly notified CCA of her unavailability, CCA, in an attempt to be conciliatory, consented to her numerous eleventh hour requests to reschedule her deposition. Moreover, on numerous occasions, including the day

---

[1] Local Civil Rule 30.1 provides that "[s]ervice of a notice of deposition five days in advance of the date of taking a deposition shall constitute 'reasonable notice' to a party as required by Rule 30(b) . . ." LCvR 30.1.

before the motion was filed, counsel for CCA to no avail attempted to resolve the issues that now are before this Court with Plaintiff's counsel. *See* Dkt. No. 24 at 2. In sharp contrast to CCA's conciliatory approach, Plaintiff has refused to cooperate in CCA's endeavor to obtain information regarding matters that are clearly relevant to her claims of violations of the District of Columbia Human Rights Act and Family and Medical Leave Act, and CCA's defense of those claims.

>   Rule 26 provides that:
>
>> [u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any *nonprivileged* matter that is *relevant* to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and *the identity and location of persons who know of any discoverable matter*.

FED. R. CIV. P. 26(b)(1) (emphasis added). Plaintiff does not dispute that the information which CCA seeks is relevant. Plaintiff erroneously believes that CCA should be satisfied with the information which she elects to disclose even if it is incomplete and unreliable.

In addition to asserting that certain information which CCA has requested is protected from disclosure based upon baseless claims of privilege, personal and confidentiality, Plaintiff also now contends that CCA's inquiries are meant to harass and humiliate her. CCA fails to understand how inquiries relating to, among other subjects, her employment after CCA, doctors who treated Plaintiff for her alleged panic attack syndrome and the identity of persons from whom she allegedly had to borrow money because of her termination[2] from CCA are harassment

---

[2] The identity of Plaintiff's relatives is important in this case as Plaintiff has failed to retain numerous records relating to her alleged damages. Dkt. No. 26 at 13. CCA thus sought to explore whether there was evidence to corroborate Plaintiff's claim for economic damages. If Plaintiff now is withdrawing any claim for damages based upon money which she borrowed from relatives, CCA no longer needs information relating to the identity of relatives from whom she borrowed money. CCA only seeks to obtain information which is relevant or likely to lead the discovery of admissible evidence. Plaintiff however has not supplemented any of her written discovery responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure to exclude from the calculation of her damages any monies which she borrowed from her relatives.

or will humiliate her when she opened the door to these matters through the allegations in her Complaint and her written discovery responses.

Rule 26(c) provides, in part, that, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense . . ." FED. R. CIV. P. 26(c). In lieu of seeking relief from this Court pursuant to Rule 26(c), Plaintiff has chosen to raise specious objections of privacy, privilege[3] and confidentiality and provide evasive answers during her deposition.[4] This Court should not allow Plaintiff to engage in these obstreperous tactics.

### C. PLAINTIFF HAS FAILED TO PROVIDE ANY EVIDENCE OR AUTHORITY THAT CCA IMPROPERLY SUBPOENAED HER MEDICAL AND PERSONNEL RECORDS.

Plaintiff fails to provide any authority that supports her belief that CCA improperly subpoenaed records from her healthcare providers[5] and an employer. Plaintiff provides no rationale for this Court relying on Maryland law to judge CCA's actions in this case. Her opposition is completely silent regarding the Health Insurance and Portability Accountability Act of 1996's ("HIPAA's") disclosure provisions.

Even if Plaintiff is correct that Maryland law as opposed to HIPAA applies, which CCA denies, Plaintiff does not explain the basis for her contention that CCA should have complied with a law that governs the release of medical records when CCA subpoenaed her personnel

---

[3] Even if Plaintiff had properly asserted that certain information was protected from disclosure based upon the attorney-client privilege or work product doctrine, she has not complied with the requirements of Rule 26(b)(5).

[4] While not material to the determination of whether Plaintiff's objections have merit, Plaintiff is correct that CCA inadvertently stated the date upon which it received her responses to its Second Request for Production of Documents. CCA received them on the last business day prior to her deposition which was February 29, 2008. *See* Exhibit A(Declaration of Alison N. Davis ("Davis Decl.") at ¶ 3).

[5] Contrary to Plaintiff's belief, CCA did not misrepresent its efforts to subpoena Plaintiff's expert, Florentino Loya. Counsel for CCA was unable to service a subpoena for deposition on Dr. Loya because Plaintiff failed to provide a current address. Nevertheless, CCA did obtain some of Dr. Loya's records because the custodian of records for Riverside Primary Care of District Heights had in its possession certain of Dr. Loya's records relating to Plaintiff. Davis Decl. at ¶ 4.

records from Kelly Services, Inc.[6]  While section 4-306 of the Health-General Article, Annotated Code of Maryland does apply to medical records, Plaintiff misinterprets this provision.

Assuming Maryland law applied to the disclosure of Plaintiff's medical records, CCA does not disagree that sections 4-306(b)(1) and (3)[7] would not be applicable to this case.  CCA is not a unit of a state or local government or a member of a multidisciplinary team assisting such as unit.[8]  CCA also is not a healthcare provider, or a provider's insurer or legal counsel.[9]  Nevertheless, as Plaintiff points out, there are four (4) additional circumstances pursuant to which a healthcare provider can release an individual's medical records without her authorization.  In this case, the exception set forth in section 4-306(b)(6) is the one that would make CCA's subpoena *duces tecum* lawful.  Plaintiff completely ignores that exception in her desperate attempt to support her meritless objections to CCA's subpoenas *duces tecum*.[10]

Finally, while not germane to this motion since the procedures set forth in HIPAA govern, because Plaintiff chose to disregard section 4-306(b)(6), she wrongfully contends that she was not required to file a motion for a protective order or a motion to quash subpoena to

---

[6] CCA cannot explain how Plaintiff did not receive a copy of the subpoena served on Kelly Services since to counsel for CCA's knowledge it was faxed and sent via certified mail, return receipt requested and delivered by the U.S. Postal Service on January 24, 2008.  Davis Decl. at ¶ 5.

[7] Plaintiff references section 4-306(a)(3), but since that provision does not exist, CCA assumes that she meant to refer to section 4-306(b)(3).

[8] Section 4-306(b)(1) provides, "[a] health care provider shall disclose a medical record without the authorization of a person in interest: (1) [t]o a unit of State or local government, or to a member of a multidisciplinary team assisting the unit, for purposes of investigation or treatment in a case of suspected abuse or neglect of a child or an adult . . ."  MD. CODE ANN. Health-General Article § 4-306(b)(1) (LexisNexis 2008).

[9] Section 4-306(b)(3) provides, "[a] health care provider shall disclose a medical record without the authorization of a person in interest:  * * * (3) [t]o a health care provider or the provider's insurer or legal counsel, all information in a medical record relating to a patient or recipient's health, health care, or treatment which forms the basis for the issues of a claim in a civil action initiated by the patient, recipient, or person in interest."  MD. CODE ANN. Health-General Article § 4-306(b)(3) (LexisNexis 2008).

[10] As stated in counsel for CCA's Declaration, counsel did receive verbal objections to its subpoenas *duces tecum*.  While not pertinent to the propriety of CCA's subpoenas *duces tecum*, counsel did not receive the fax attached to Plaintiff's opposition.   Davis Decl. at ¶ 6.

assert her objections to the production of her medical records. The model notice for which section 4-306(b)(6) provides specifically instructs a party as to the timing and manner of objecting to the production of documents. Even though not required to do so under HIPAA, CCA provided that notice to Plaintiff.[11] Nevertheless, Plaintiff regardless of the basis for her objections slept on her rights and did not file a proper and timely motion.[12]

### D.      CONCLUSION

For all of the reasons set forth above and in the memorandum of points and authorities in support of CCA's motion, this Court should grant CCA's motion.

Dated: April 9, 2008                                   Respectfully submitted,


By:/s/ Alison N. Davis
Alison Nadine Davis
D.C. Bar No. 429700
adavis@fordharrison.com
Dannie B. Fogleman
D.C. Bar No. 414311
dfogleman@fordharrison.com

FORD & HARRISON LLP
1300 19th Street, N.W., Suite 700
Washington, DC  20036
(202) 719-2000
(2020 719-2077 (Facsimile)

Attorneys for Defendant CCA of Tennessee, Inc.

DC:73534.1

---

[11] Notably, under Maryland law, Plaintiff would have had 30 days instead of 14 days under Rule 45(c) of the Federal Rules of Civil Procedure to serve objections to the subpoenas *duces tecum*.

[12] Plaintiff's concerns regarding the timing of her healthcare providers' disclosure of her medical records do not relate to CCA's obligations under HIPAA. CCA provided the proper notice to Plaintiff and her healthcare providers. Moreover, CCA did not rely on those documents until more than 30 days after it notified Plaintiff that subpoenas *duces tecum* had been served and no motion for protective order or motion to quash was filed. Assuming Rule 45(d)(2)(B) [incorrectly cited as 45(a)(4)(c)(3)(B)] of the Federal Rules of Civil Procedure applied to these documents, which it does not because Plaintiff did not object to their production on the basis of the attorney-client privilege or work product doctrine, CCA's actions were proper.