# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **RENITA S. WALSTON JACKSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06-616** |
| ) | |
| **CCA of Tennessee, Inc.,** ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION

Now comes defendant, CCA of Tennessee's motion to compel discovery pursuant to Rule

37 of the Federal Rules of Civil Procedure.  Plaintiff, Renita Walston Jackson, opposes this

motion.  Upon consideration of the motion [24], plaintiff's opposition [26], the reply [27], the

entire record, and applicable law, the Court finds that defendant's motion [24] to compel will be

GRANTED.

## I.    Background

The plaintiff filed her *pro se* complaint in the Civil Division of the Superior Court of the

District of Columbia on September 15, 2005. (Compl. [24-3] at 1.)  Plaintiff alleges:

> After going through [approximately] [two] years of discrimination (difference in
> treatment) and [h]arassment, I attempted to inform management verbally and in
> writing and due to actions by [several coworkers] that were beyond my control I
> was wrote up [r]epeatedly, harassed and ultimately [t]erminated wrongfully. Due
> to a . . . [d]ifference in treatment/[h]arassment, I have [s]ubsequently developed
> "Panic Attack Syndrome," a medical disorder due to stress.

(Compl. at 1.)  Plaintiff essentially argues that CCA wrongfully denied her medical leave under

the District of Columbia Family and Medical Leave Act (DCFMLA), discriminated against her

when she became pregnant, and failed to accommodate her panic anxiety syndrome under the

District of Columbia Human Rights Act. (*See* Pl.'s Mot. [8] for Recons. ¶ 4.)

On March 4, 2006, after plaintiff retained counsel, CCA received plaintiff's responses to their first set of interrogatories. (Def.'s Ex. 2 [24-4] at 1.)  Plaintiff did not object to CCA's interrogatories. (*Id*.)

From April 21, 2006 thru November 14, 2006, plaintiff attempted unsuccessfully to have this Court remand this case to the Superior Court for the District of Columbia. (*See* Order [11].) Thereafter, plaintiff took no action to prosecute this case until the Court issued an order on January 29, 2007 for plaintiff to show cause why this case should not be dismissed for failure to file a report of a Local Rule 16.3 scheduling conference. (*See* Order [12].)

Plaintiff responded to the order to show cause on February 6, 2007. (*See* Pl.'s Resp. [13] at 1.)  On May 9, 2007, this Court provided the plaintiff with a second opportunity to submit the Local Rule 16.3 report and she complied on June 4, 2007. (*See* Order [14]; Doc. [16] at 1.) Plaintiff then filed a motion to dismiss her claims for discrimination under the federal Americans with Disabilities Act and federal Family and Medical Leave Act which was granted on November 5, 2007. (*See* Order [21].)

Thereafter, CCA noticed plaintiff's deposition for November 29, 2007. (*See* Def.'s Ex. 4 [24-5] ¶ 3.)  On November 27, 2007, counsel for Plaintiff informed counsel for CCA that plaintiff would not be available for her deposition. (*Id*.)  On December 20, 2007, plaintiff's deposition was rescheduled to January 11, 2008 at 10:00 am. (*Id*. ¶ 4.)  On January 11th, the deposition of the plaintiff commenced at 11:30 a.m. and adjourned at 2:23 p.m., due to plaintiff's childcare arrangements. (Def.'s Ex. 5 [24-6] at 1.)  The deposition was to resume on January 25, 2008. (*Id*. at 33.)

2

On January 22, 2008, CCA served subpoenas *duces tecum* on the healthcare providers whom the plaintiff had either identified in her discovery responses or whose names were found in documents which she had produced. (*See* Def.'s Ex. 4 [24-5] ¶ 5.)  CCA provided notice to plaintiff of the subpoenas *duces tecum* and her right to object. (*Id*. at 12-26.)  CCA also served a subpoena *duces tecum* on Kelly Services, Inc., whom plaintiff had identified at her deposition as an employer for whom she worked after her employment with CCA terminated. (*See* Def.'s Ex. 6 [24-7].)

On January 24, 2008, defendant served a second request for production of documents and requests for admission on plaintiff. (Def.'s Ex. 4 [24-5] ¶ 5.)  Shortly after receiving the subpoenas *duces tecum*, counsel for plaintiff informed CCA that she would be filing a motion to quash because plaintiff had not consented to her healthcare providers' disclosure of her medical records to CCA. (*Id*. at 6.)  Counsel for plaintiff also informed CCA that plaintiff would not be attending the January 25th deposition because she was ill. (*Id*.)  A motion to quash was never filed by counsel for plaintiff.

On February 6, 2008, CCA proposed a protective order which would have addressed plaintiff's concerns regarding confidentiality. (Def.'s Ex. 4 [24-5] ¶ 7.)  Plaintiff never agreed to a protective order. (*Id*.)  On March 2, 2008, CCA received responses to its second request for production, and requests for admissions. (*See* Def.'s Ex. 7 [24-8]; Def.'s Ex. 9 [24-10].)  Plaintiff objected to providing additional information regarding her search for employment after her employment with CCA terminated and money which she allegedly borrowed from relatives on the grounds of "privilege and confidentiality." (*See* Def.'s Ex. 7 [24-8] at 3-4.)  Plaintiff proceeded, however, to identify relatives and the amount of money which she allegedly was

forced to borrow from them because of CCA. (*Id.*)  Plaintiff also provided a list of personal effects that she claims she lost because of CCA's conduct. (*Id.*)  At 11:59 p.m. on March 2, 2008, counsel for plaintiff sent an email to the defendant in which she advised that she would be seeking a protective order and wanted CCA's agreement that it would not ask any questions relating to the documents that had been provided in response to the subpoenas *duces tecum*. (Def.'s Ex. 4 [24-5] ¶ 9; Def.'s Ex. F. [24-5-F].)

Prior to the commencement of the deposition the next morning, counsel were unable to resolve this discovery issue. Consequently, the parties contacted this Court via telephone to advise that there was an ongoing discovery dispute. The parties were directed to continue as far as possible with the deposition, and, if necessary, proceed with a motion. (Def.'s Ex. 4 [24-5] ¶ 10.)

Defendant claims that during plaintiff's deposition on March 3, she was uncooperative and provided evasive and incomplete responses. (Def.'s Mot. [24] at 7.)  Moreover, defendant claims that plaintiff repeatedly would not answer questions posed and thereby defendant's efforts to gather information regarding both liability and damages were thwarted. (*Id.*)

## II.     Legal Standard

Courts have considerable discretion when administering discovery matters. *Food Lion Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (citing *Brune v. Internal Revenue Serv.*, 861 F.2d 1284, 1288 (D.C. Cir. 1988)).  The scope of discovery in civil actions is broad, allowing for discovery regarding any nonprivileged matter that is *relevant* to a claim or defense. *See* FED. R. CIV. P. 26(b) (emphasis added).  The term relevance

4

at the discovery stage is broadly construed to include information which is not admissible at the

trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence. *See id*.  However, all discovery is subject to the limitations imposed by Rule

26(b)(2)©. *See id*.  Furthermore, discovery of matters not "reasonably calculated to lead to the

discovery of admissible evidence" are not within the scope of discovery. *Oppenheimer Fund, Inc.*

*v. Sanders*, 437 U.S. 340, 352 (1978) (internal citation omitted).

Rule 37 of the Federal Rules of Civil Procedure provides that a "[o]n notice to other

parties and all affected persons, a party may move for an order compelling disclosure or

discovery." Fed. R. Civ. P. 37(a)(1).  In relevant part, Rule 37 provides:

> If the motion is granted- or if the disclosure or requested discovery is provided
> after the motion was filed-the court must, after giving an opportunity to be heard,
> require the party or deponent whose conduct necessitated the motion, the party or
> attorney advising that conduct, or both to pay the movant's reasonable expenses
> incurred in making the motion, including attorney's fees.

FED.R.CIV.P. 37(a)(5)(A).  "Under Rule 37, the district court has broad discretion to impose

sanctions for discovery violations, and to determine what sanctions to impose." *Tequila*

*Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 248 F.R.D. 64, 68 (D.D.C. 2008) (citing *Kister v.*

*District of Columbia*, 229 F.R.D. 326, 329 (D.D.C. 2005)).

"The party objecting to . . . discovery bears the burden of 'show[ing] why discovery

should not be permitted.' " *Alexander v. F.B.I.*, 194 F.R.D. 299, 302 (D.D.C. 2000) (quoting:

*Alexander v. FBI*, 193 F.R.D. 1, 2-3 (D.D.C. 2000)).  This requirement enables the requesting

party to evaluate and determine whether to challenge the objection raised.  "When faced with

general objections, the applicability of which to specific document requests is not explained

further, '[t]his Court will not raise objections for [the responding party],' but instead will

'overrule[] [the responding party's] objection[s] on those grounds.'" *D.L. v. District of Columbia*, 2008 WL 2555101, at *2 (D.D.C. June 27, 2008) (quoting *Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd.*, 242 F.R.D 1, 12 (D.D.C. 2007)).

### III.    Analysis

Plaintiff repeatedly would not answer the questions posed and counsel for plaintiff also made specious objections during the deposition. Defendant's efforts to gather information regarding both liability and damages were limited by plaintiff's unwarranted actions. (*See e.g.*, Def.'s Ex. 8 [24-8] at 134:3-15, 138:2-14, 144:2-19, 157:7-21.) For example, plaintiff refused to provide additional information regarding the $41,250.00 she claims she had to borrow from relatives due to her termination from CCA, on the grounds that the information was "privileged and confidential." (*Id.* at 152:12-156:48.) Plaintiff also resisted CCA's efforts to gather information relating to her marriage and her husband's knowledge of this case because it too was "personal and confidential." (*Id.* at 143:15- 44:12.)

Plaintiff would not even provide information regarding one of her healthcare providers. Plaintiff refused to provide any information regarding her primary care physician, Dr. Poydras, who even the plaintiff admits had treated her for anxiety and panic attack syndrome. (*Id.* at 141:5-143:14.) Plaintiff also objected to questions regarding the wages which she earned while working for BT Healthcare Services ("BT") because "Ms. Jackson has never provided you with any information relating to BT" and "(t)hat is the information that you illegally obtained from Kelly Services without her authorization." (*Id.* at 161:11- 62:13.) Counsel for plaintiff went so far as to object to a doctor's note which plaintiff produced to CCA in response to its

interrogatories and requests for production on the grounds they were:

> included in the illegal documents you received from your illegal subpoena that you represented yourself. . On January 22nd you misrepresented yourself under 4-306, the Maryland Statute, that you were a law enforcement and you were entitled to these documents, and which you were not. So we are objecting to any of these documents of which we did not provide to you, and I will review these documents and make sure that none of this was actually included in my request to you, and I'm sure that they were not, but we will get back to you.

(*Id*. at 175:8-176:6.)  Due to plaintiff's uncooperativeness and her counsel's objections, the deposition became unproductive and was adjourned pending the outcome of this motion. (Def.'s Mot. [24] at 9.)

Plaintiff cannot make her illness the issue of litigation and then refuse to cooperate during her deposition when faced with questions pertaining to her illness.  Plaintiff's uncooperativeness is exemplified by her answer to defendant's question which asked, "In 2006 you borrowed $10,750 from your parents . . . [a]re there any documents to support the $10,750?" (Def.'s Ex. 8 [24-9] at 155:1-22.)  Plaintiff responded, "Again, as I stated, no one on this list is a party accompany to my lawsuit, and all of my information is privileged and confidential." (*Id*.)

Plaintiff has refused to cooperate in CCA's process of gaining information regarding matters that are relevant to both plaintiff's claimed violations of the District of Columbia Human Rights Act and Family and Medical Leave Act, and also to defendant's defense of those claims. The Court finds that the plaintiff has no right to withhold information pertaining to her illness or work history as they are not privileged matters and are relevant to the claims at issue in this litigation.  Defendant's inquiries relating to her employment after CCA, doctors who treated plaintiff for panic attack syndrome, and the identity of persons from whom she had to borrow money because of her termination are not harassment, but rather moves reasonably calculated to

be relevant to defendant's defense.  Therefore defendant's motion to compel will be GRANTED.

Defendant's motion before the Court also included a request to order plaintiff to pay defendant's reasonable expenses incurred in making defendant's motion to compel, pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure." (Pl.'s Mot. 15.)  This Court has previously observed that "the language of the Rule itself is mandatory, dictating that the Court must award expenses upon granting a motion to compel disclosure unless one of the specified bases for refusing to make such an award is found to exist." *Cobell v. Norton*, 226 F.R.D. 67, 90 (D.D.C. 2005).

Plaintiff claims that she was justified in her refusal to disclose.  "The Supreme Court has stated that a party meets the 'substantially justified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the motion." *Alexander v. FBI*, 186 F.R.D. 144, 147 (D.D.C. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

But plaintiff has failed to show that she was substantially justified while not cooperating during her deposition.  Accordingly, defendant's request for an award of reasonable expenses, including attorney's fees, shall be granted and defendant shall file a request for an amount within 10 days. The plaintiff shall have 10 days from the filing of defendant's request to file its opposition.

Because plaintiff's failure to cooperate with defendant during her deposition was not substantially justified, this Court will compel plaintiff to appear for the continuation of her deposition at such time set by defendant's counsel.  Further this Court directs the plaintiff to answer all questions in accordance with Federal Rule 26, except for those subject matters which may be subject to either the attorney-client privilege or the work-product doctrine.  The Court

8

will also impose sanctions against plaintiff and her counsel and award reasonable expenses, including costs related to making this motion and attorneys' fees, to the defendant in accordance with Federal Rule 37(a)(5)(A).  Plaintiff and her counsel shall be equally liable for the expenses awarded to defendant.


**IV.     Conclusion**

Upon full consideration of the parties' filings, applicable law, and the record herein, this Court concludes that the defendant's motion [24] to compel shall be GRANTED.

A separate order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, on Nov. 7, 2008.